# Banger's Appeal.

1. Under the provisions of the Act of March 18th, 1875, § 1 (P. L. 15), authorizing cities of the third class to assess and collect taxes not exceeding one per cent. per annum upon all persons, real and personal property, and also other matters and things within said cities taxable for state or county purposes, such cities may impose taxation upon subjects not rendered by law taxable for state purposes.

2. Under the provisions of the said Act, cities of the third class may impose a tax upon the occupations of their citizens.

3. Under the provisions of the above Act, cities of the third class may impose a tax of a sum certain upon all occupations, or may classify different occupations, and assess a uniform occupation tax upon each class. It cannot, however, impose an occupation tax based upon the amount earned by each individual in his occupation. This is an income tax unauthorized by law.

4. A city of the third class by ordinance directed that a certain tax should be imposed upon "all personal property, and all objects and things assessed as unclassified." In pursuance of this provision the assessors were directed "to assess all offices and posts of profit, professions, trades, and occupations," according to the income derived from each. The assessors assessed laboring men, clerks, and professional men according to the income derived from their occupation. Bankers and business men were assessed in proportion to the sum that it would cost to hire a clerk to perform their duties. Upon application by a taxpayer for an injunction to restrain the collection of a tax assessed upon his occupation as above:

*Held*, that the tax was an income tax not authorized by law; that its assessment was in violation of Article IX., § 1, of the Constitution of Pennsylvania, requiring all taxes to be uniform on the same class of subjects, and that an injunction would therefore issue.

5. When a tax is lawfully assessed, and there are mere irregularities in the valuation and assessment, a Court of Equity will not restrain its collection by injunction. But where there is a want of power to tax, or there is a disregard of constitutional provisions in the mode of assessment, equity will interfere by injunction to restrain its collection.

February 18th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY and CLARK, JJ. STERRETT and GREEN, J. J., absent.

APPEAL of George S. Banger, from a decree of the Court of Common Pleas of *Lycoming county:* Of January Term, 1884, No. 343.

Bill in equity, wherein George S. Banger was complainant and the city of Williamsport and Martin O'Hehir, tax collector, were defendants, praying that the defendants be enjoined from collecting certain taxes.

The bill set forth that complainant was a citizen and property owner in the city of Williamsport; that the said city, through her councils, authorized a "triennial assessment" of the alleged taxable property in the several wards in 1881; that the assessors received their authority from a "committee on tax," appointed by the councils of said city; that this said committee on tax issued to these assessors certain instructions as to the manner in which assessments were to be made, and the value to be placed on the various kinds of property liable to taxation; and that they also instructed the said assessors to assess all offices, posts of profit, trades, and occupations, at the amount of the yearly income arising therefrom; that acting under such authority, triennial assessments were made by said assessors; that by the Act of March 18th, 1875, which has been accepted, and is part of the law governing the city of Williamsport, it is provided for the purpose of appeal from assessments so made as aforesaid, that a committee shall be appointed by councils, who shall constitute a board of appeal and revision, whose decision shall be final as to the valuation and assessment; that the said city of Williamsport, in the triennial assessment made in 1881, assessed the complainant's occupation at $1,100, which said committee afterwards, on appeal, raised to $2,000, upon which said amount the said city, in 1881, levied a tax of $19.71 for general revenue, $2.19 for sinking fund, $13.14 for payment of interest, $6.57 for poor tax, amounting in the aggregate to $41.61; and in 1882 levied a tax of $21.90 for general revenue, $2.19 for sinking fund, $8.76 for payment of interest, $6.57 for poor tax, amounting in the aggregate to $39.42; and in addition to said taxes the city of Williamsport levied a tax against your complainant of $2 for each of said years on watches; that the assessment of the complainant's occupation clearly violated the provisions

of the Constitution of Pennsylvania, which provides that all taxes shall be uniform upon the same class of subjects, in that. in assessing complainant with an occupation valued at $2,000, the said committee distinguished between him and the large majority of taxpayers of the city of Williamsport, by assessing him with an occupation based upon his alleged income, which rule or basis of assessment the said committee adopted neither as the assessment made upon themselves, nor upon the large majority of the taxpayers of the said city of Williamsport, thereby levying a tax upon complainant far beyond the tax levied upon other individuals upon the same subject matter. That said inequality of assessment was fully called to the attention of said committee, but they refused any relief; that the Act of March 18th, 1875, which provides that the decision of said committee sitting as a board of appeal and revision, upon the amount of the valuation and assessment, shall be final, is unconstitutional; that the said city of Williamsport had no authority to levy a poor tax; that the said city of Williamsport had neglected to assess a large amount of property in Williamsport assessable for city purposes, and that thereby your complainant was compelled to pay more than his just proportion of taxes; that the said tax upon watches was without authority of law.

The bill prayed that the said city of Williamsport, her officers, agents and employees, and the said O'Hehir may be restrained by injunction from the collection of said tax.

The answer admitted that plaintiff was a resident and taxpayer in the Fifth ward of said city, and that said councils caused to be made the said " triennial assessment," but denying that the assessors received their authority from the committee on tax, but averred that they were appointed by the Court of Common Pleas of Lycoming County, and received their authority from such appointment and the law relating to the duties of assessors. The answer denied that the committee on tax directed the assessors to place any particular value on the various kinds of property, but admitting that said committee on tax, in a circular to assessors, enjoined them to assess all offices and posts of profit, professions, trades and occupations, " at what you shall believe to be the yearly actual income arising therefrom," and denied that said committee could give any binding instructions to the said assessors, and that the assessors proceeded to make the assessment under the instructions of said tax committee. Defendants admitted that the Act of March 18th, 1875, provides for a committee of appeal and revision, whose decision shall be final, but denied that said Act is unconstitutional and void. They neither admitted nor denied the levy of the tax as set forth in plaintiff's

13 OUTERBRIDGE—6

bill, but required proof to be made, and averred that said committee had the right to fix the valuation of plaintiff's occupation, which amount so fixed was final, and denied that in so fixing the amount a discrimination was made between the plaintiff and other taxpayers, in violation of the Constitution, but averred the amount was a uniform assessment on the same class of subjects, and that there was authority in the Act of March 18th, 1875, for the assessment of occupation as made. Defendant neither admitted nor denied the levy of a poor tax, but required proof to be made, and denied that there had been any failure or neglect in assessing a large amount of property liable to taxation ; denied that plaintiff has any cause of complaint, and averred that if any he had, his only and proper mode of procedure is at law.

The case was referred to W. D. Crocker, Esq., as examiner, before whom testimony was produced as set forth in the opinion of this court. The case was then heard, by agreement of the parties, on bill, answer, and proofs.

MAYER, P. J., (of the twenty-fifth judicial district), filed the following opinion (after stating the facts substantially as hereinbefore set forth) :—

" We will consider first the objection made to the jurisdiction of the court to entertain this bill, for if this objection should prevail it will be unnecessary to consider the other questions raised by the bill and answer.

" It is contended on part of the defendants that a Court of Equity has no jurisdiction to restrain the collection of taxes alleged to have been illegally assessed, as the plaintiff has a full and adequate remedy at law.

" The rule is well settled in Pennsylvania that a bill in equity will not be entertained where the party complainant has a full and adequate remedy at law. But it is equally as well settled that Courts of Equity will entertain jurisdiction to restrain the collection of a tax which has been levied without authority of law.

" ' That a Court of Equity may enjoin against the collection of a tax levied without authority of law is undoubted ' : St. Clair School Board's Appeal, 24 P. F. S., 256.

" The distinction between those cases in which Courts of Equity have declined jurisdiction and in which they have entertained jurisdiction to restrain by injunction the collection of taxes, is this : Where the complaint set forth in the bill shows a want of jurisdiction in the officers to levy and assess taxes, or that the matters and things upon which the taxes were assessed and levied were not the subjects of taxation, then a Court of Equity has and will exercise jurisdiction ; but where a complaint is made only against errors and irregulari-

[Banger's Appeal.]

ties in the valuation and assessment, Courts of Equity will decline to interfere, and the party complainant must have recourse to the appellate tribunal created by the legislature for the correction of the assessments.

"As was said by THOMPSON, J., in Hughes *v.* Kline et al., 6 Casey, 231 : ' It will not do to permit the collection of taxes to be interfered with by such process, unless in the clearest cases of want of jurisdiction in the assessing or collecting officers. The correction of errors in assessments that may be made on appeal to the commissioners, or by any superadded jurisdiction for that purpose, is final and conclusive—is not subject to be reviewed by bill in equity, nor even in this court.'

"This brings us to the consideration of the main question presented by the bill. Had the city of Williamsport power under her charter and the supplement thereto, to assess and levy a tax upon the occupation of plaintiff? If no such power is to be found in her charter and supplement, then we can entertain jurisdiction of this bill and restrain the collection of such tax. It would be a tax assessed and levied without authority of law, and the plaintiff's right to maintain his bill ' is undoubted.'

"The grant of power to the said city to assess and levy an occupation tax is derived from clause 1 of section 20 of the ' Wallace Law,' which authorizes the 'levy and collection of taxes for general revenue purposes, not to exceed ten mills on the dollar, in any one year, on all the real, personal and mixed property within the limits of said city, taxable according to the laws of the State of Pennsylvania, the valuation of such property to be taken from the assessed valuation of the taxable property therein made under provisions of law regulating the same,' and from section 1 of an Act of Assembly approved March 18th, 1875, which enacts: ' That it shall be lawful for cities of the third class, in their corporate capacities, to provide by ordinance or ordinances for an assessment and collection of taxes not exceeding one per centum upon the assessed valuation in any year, on all persons, real and personal property, and all other matters and things within said respective cities, taxable for state and county purposes, for the payment of loans to support the government and make the necessary improvements in said respective cities.' It is further provided in this section that 'for purposes of appeal a committee on tax of seven or nine, as councils may determine, to be appointed by councils, shall constitute the board of appeal and revision, whose decision upon the amount of valuation and assessment shall be final.'

"In the construction of any grant of the power to tax made

by the state to one of its municipalities, the rule which is accepted by all the authorities is, that it should be with strictness. The reasonable presumption is held to be that the state has granted, in clear terms, all it has intended to grant. There is no inherent power in a municipality to levy taxes. It can tax only what the state has thought proper to authorize, and whatever authority municipal officers assume to exercise they must be able to show their warrant for in the words of the grant. Applying to this case this rule of construction, it cannot be successfully contended that occupation was included within the meaning of the words 'real, personal and mixed property,' as used and employed in clause 1, section 20, of the 'Wallace Law.' Consequently the councils of the city of Williamsport had no power to assess and levy a tax upon the occupation of plaintiff for general revenue purposes. The assessment of this tax under this provision of the charter was without authority of law, and its collection can be restrained by injunction.

"Authority in the charter of a municipal corporation to tax 'all real and personal estate within the corporate limits of the city was held not to confer upon the corporation power to tax income or particular occupations:' Savannah *v.* Hartridge, 8 Ga., 23.

"Does section 1 of the Act of March 18th, 1875, confer the power to tax occupations? It provides for the assessment and collection of taxes on all persons, real and personal property, and all other matters and things within said city taxable for state and county purposes. The words employed in this Act to express the intent of the Legislature are plain, intelligible and comprehensive. The power is granted to assess and collect taxes not only on real and personal property, but on all persons, as well as all other matters and things taxable for state and county purposes, clearly indicating the intent to embrace all subjects of taxation within the terms of said grant, persons as well as things. That the words 'taxable for state and county purposes,' in their natural and ordinary acceptation, would include everything upon which taxes could be assessed and levied by the state or county seems to be plain, and would indicate an intent on the part of the Legislature to comprehend all subjects of taxation for state or county purposes.

"But the counsel for plaintiff, for the purpose of showing an intent varying from that which the words import, argue with great ingenuity that the construction to be placed on this Act must be gathered from the Act of Assembly of April 29th, 1844, wherein certain subjects of taxation are enumerated as being taxable 'for state and county purposes.' When

this Act of 1844 was passed, 'all offices and posts of profit, professions, trades and occupations' were enumerated among the subjects of taxation for both state and county purposes. In 1871 an Act of Assembly was passed exempting offices, occupations, etc., from liability for state tax, and occupations are only taxable for county purposes. And it is contended that when the Legislature used the words 'for state and county purposes' in the Act of March 18th, 1875, they intended to make liable to taxation only the various subjects of taxation enumerated in the Act of 1844, and as occupations were exempted from State taxes by the Act of 1871, and were not liable to taxation for both state and county purposes, that under the Act of March 18th, 1875, there was no power to tax them.

"We do not agree with this construction. Had the Legislature intended to assess and collect taxes only upon the subjects of taxation enumerated in the Act of 1844, they would have so declared.

"The generality of expression used in said Act of March 18th, 1875, indicates clearly that it was the intent of said Act to confer the power to tax all persons and things liable to taxation for either state or county purposes, the latter of which would include a tax upon occupation under the Act of Assembly of April 15th, 1834.

"And this construction is strengthened by the fact that in the Act of March 18th, 1875, power is given to assess and levy a tax upon all persons, whereas in the Act of 1844 persons are not made the subjects of taxation, but only personal estate.

"Conceding that the plaintiff is liable to a tax upon his occupation under the Act of March 18th, 1875, it is argued that said Act is violative of various provisions of the Constitution :—

"1st. That it is in conflict with section 3, article 3, which provides that 'No bill except general appropriation bills shall be passed containing more than one subject, which shall be clearly expressed in the title.'

"Under this article of the Constitution it was never contemplated or intended that the title of an Act of Assembly should be a full index of the contents of the law. All that is required in order that this provision of the Constitution should not be infringed is, that the title should fairly give notice of its subject so as reasonably to lead to an inquiry into the body of the bill; and where the Act is a supplement, 'the true rule is, that where the legislation in the supplement is germane to the subject of the original bill, the object of such supplement is sufficiently expressed in the title.' (State Line and Juni-

ata Railroad Company's Appeal, 77 Pa. St. Rep., 431.)    We discover nothing in the title or the contents of this supplement which violates this provision of the Constitution.

" 2d.  It is insisted that it violates section 6, article 3, of the Constitution, which provides that 'No law shall be revived, amended, or the provisions thereof extended or conferred by reference to the title only, but so much thereof as is revived, amended, extended or conferred, shall be re-enacted and published at length.'    It cannot be claimed that in the enactment of this supplement there is any violation of the first part of this section, for there was no effort to revive or amend the original Act, or to extend or confer its provisions by reference to its title only.    All that this constitutional provision requires is, that a supplemental or amendatory Act should be set forth and published at length in its amended form.    As was said in the opinion of the court in Bank *v.* Caldwell (39 Leg. Intelligencer, 414), 'this provision was intended to prevent covert legislation, and the passage of laws whose meaning and object are not fully disclosed.'    If there is no attempt to legislate by reference to the title of the old law, it is, I think, sufficient if the proposed law in its amended form is 're-enacted and published at length.'    Judge Cooley, in his work on Constitutional Limitations, page 185, when treating of a similar constitutional provision, says that the requirement 'is fully complied with in letter and spirit if the Act or section revised or amended is set forth and published as revised or amended, and that anything more only tends to render the statute unnecessarily cumbrous.'

" Again, it is contended that that portion of the Act of Assembly of March 18th, 1875, which provides that the decision of the 'committee on tax,' sitting as a board of appeal and revision, upon the amount of valuation and appraisement shall be final, is unconstitutional and void, in that it takes away from the citizen the right of trial by jury, and deprives him of his property without 'the law of the land.'

" We do not think that it has ever been held that taxation for general purposes is an infringement of the Constitution relating to the acquisition and enjoyment of property, and the right of trial by jury has no application to proceedings for the assessment and collection of taxes.  ' The municipal government is really but a branch of the government of the state, and whatever powers of taxation the Legislature possess they may lawfully grant or delegate to such bodies.'  (Durach's Appeal, 62 Pa. St., 494.)  And they may also prescribe the machinery by which the assessment and collection of taxes may be made.

" Nor does the evidence taken in the case show that the

[Banger's Appeal.]

'committee on tax' have violated the provision of section 1, article 9, of the Constitution, which requires that 'all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax.'

"It has not been shown that any occupations have been exempted from the assessment of a tax under the Act of March 18th, 1875, nor that there has been any discrimination in the mode of assessment. If the tax had been restricted to only certain kinds of occupations, or to a particular class, and others had been exempted therefrom, the inequality and want of uniformity would be manifest. But nothing of this kind appears in the evidence. 'A tax cannot be deemed unequal because reaching one occupation, if it is to reach all who follow that. Let it reach all of a class, either of persons or things, it matters not whether those included in it be one or many, or whether they reside in any particular locality or are scattered all over the state. It would be only when individuals of the class were singled out for exemption that the inequality would be manifest.' (Cooley on Taxation, page 128.)

"The only complaint is that the 'committee on tax' has discriminated against the plaintiff, by raising his assessment and valuation higher than other tax-payers. For this excess of valuation the only remedy of the plaintiff is by application to the board of revision, the tribunal constituted by the Legislature for the correction of all errors in assessment and valuation. We are powerless to afford him relief in this proceeding.

"What has been said in regard to the assessment of taxes upon occupations under the Act of Assembly of March 18th, 1875, will apply also to the assessment of a tax upon watches. It only remains for us to consider the legality of the assessment of the poor tax, which was levied by the Select and Common Councils of the city. An examination of the 'Wallace Law,' and the supplements thereto, except as to cities of the fifth class, will disclose that there is no power or authority conferred upon the city or its corporate officers to levy a poor tax. If such power exist it must be found elsewhere. That this power does not exist is evidenced by the fact that the Legislature, by an Act of Assembly approved May 19th, 1879 (P. Laws, 65) conferred upon cities of the fifth class, in their corporate capacities, the power to levy and collect poor taxes. Had this authority existed under the 'Wallace Law' there would have been no occasion for the passage of this law.

"Under the provisions of the 'Wallace Law' it is provided, in section 53, that no acceptance of said law shall be construed to be a repeal or surrender of any rights, powers, privileges, and franchises heretofore by law conferred on such city, not inconsistent with the provisions of this Act.

" For the purpose of determining whether said city has power to levy a poor tax, and in whom is lodged the authority to assess said tax, it will be necessary to refer to the powers possessed by said city prior to the acceptance of the 'Wallace Law,' which are not inconsistent with the provisions of said Act, as those powers are saved and preserved to said city by section 53.    The city of Williamsport was incorporated by an Act of the Legislature approved January 15th, 1866.    By section 10 of said Act it is provided : ' that all and singular the Acts of Assembly respecting the borough of Williamsport, and ordinances, by-laws, rules and regulations of the same, as they existed at and immediately before the passage of this Act, except so far as the same are hereby altered or supplied, shall be and remain in force in said city in the same manner and with the same effect as if this Act had not been passed.'    The Act of Incorporation did not grant the power to levy a poor tax, so that reference must be had to the various Acts of Assembly which were in force in the borough of Williamsport regulating the assessment of a poor tax, and which were not affected by the Act of Incorporation of said city, nor by the acceptance of the ' Wallace Law.'    All of said Acts were expressly saved both in the Act of Incorporation and by the terms of the ' Wallace Law,' except where there is an inconsistency or they have been altered or supplied.

" On the 14th day of April, 1852, an Act of Assembly was passed, by the 2d section of which it is provided that the provisions of the Act entitled ' An Act Regulating Boroughs,' passed the 3d day of April, 1851, be and the same is hereby extended to the borough of Williamsport.    By the 22d section, 6th paragraph, of said Act ' Regulating Boroughs,' the borough electors are authorized annually to elect two overseers of the poor, if necessary, who shall perform the duties and be subject to the provisions of the law regulating township officers and elections.    On the 23d day of March, 1865, an Act of Assembly was passed changing the mode of selecting overseers from election by electors to appointment by council, but their powers and duties remain the same.    The overseers of the poor are appointed by the city councils, and are subject to the provisions of general borough law of April 3d, 1851; and as by the 6th paragraph of the 22d section of said Act, which makes overseers subject to the provisions of the law regulating township officers, recourse must be had to said law to ascertain what the powers of said overseers are.

" The 26th section of the Act of Assembly of April 15th, 1834, authorizes the overseers of the poor ' to lay a rate of assessment not exceeding one cent on the dollar, at one time, upon all real and personal estate in said township.'

[Banger's Appeal.]

" Under this Act the overseers appointed by the city are the proper authorities to levy the poor tax, and the councils of the city were not authorized to levy said tax.

" Being of the opinion that none of the objections which the plaintiff has raised against the validity of the taxes upon occupation or watches, under the Act of Assembly of March 18th, 1875, are tenable, the defendants cannot be restrained in the collection of them.   In regard to the taxes assessed upon his occupation for general revenue purposes under clause 1, section 20, of the 'Wallace Law' and the poor taxes, we have already indicated that these taxes were levied and assessed without authority of law, and that defendants must be restrained from collecting them."

A decree was thereupon entered enjoining the defendants from collecting the taxes for general revenue purposes based upon " occupation," and also restraining them from levying all or any poor tax.

Whereupon the complainant took this appeal, assigning for error the action of the court: (1) In holding that the Act of May 23d, 1874, gave to the city of Williamsport the right to assess occupations for any purpose whatever.  (2) In holding that the Act of March 18th, 1875, conferred upon the city of Williamsport power to levy and collect a tax based upon an assessment of occupation, or that an occupation could be assessed against any individual under said Act.   (3) In not holding that, granting the right to assess an occupation, the manner of such assessment as made was in clear violation of section 1, article 9, of the Constitution of Pennsylvania, which provides that all taxes shall be uniform upon the same class of subjects.   (4) In not holding that the Act of March 18th, 1875, was unconstitutional, in that it violates section 6, of Article III. of the Constitution of Pennsylvania.  (5) In holding that the city of Williamsport was authorized by law to tax watches.  (6) In not decreeing a perpetual injunction restraining the city of Williamsport, her officers, agents, and employés, from the collection of any tax from the appellant levied upon the assessment of occupation, and also a tax upon watches.

*H. C. McCormick* and *B. S. Bentley*, for appellant.

*James M. Wood* and *H. W. Watson*, for the appellees.

Mr. Justice PAXSON delivered the opinion of the Court, March 16th, 1885.

Had there been any serious dispute as to the facts of this case we might, and probably would, have sent it back, or referred it to a Master to find the facts.   There was no Master

below, and there is no distinct finding of facts by the court. But inasmuch as a careful examination of the testimony as taken by the Examiner discloses no conflict, we have con· cluded to consider and dispose of the case as presented.

The plaintiff is a citizen and taxpayer of the city of Williamsport. He complains that the city has assessed his " occupation " at $2,000, and that in doing so the said city has " clearly violated the provisions of the Constitution of Pennsylvania, wherein it provides that all taxes shall be uniform upon the same class of subjects, in that assessing him with an occupation valued at $2,000 the said committee discriminated between him and the large majority of the taxpayers of the city of Williamsport by assessing him with an occupation based upon his alleged income, which rule or basis of assessment the said committee adopted neither as to the assessment made upon themselves, nor upon the large majority of the taxpayers. of the city of Williamsport, thereby levying a tax upon him far beyond the tax levied upon other individuals upon the same subject matter."

The principal questions presented for our consideration are : 1st. Has the city of Williamsport power to assess and levy a tax upon " occupations ? " and 2d. If it possesses such power, was the power exercised in accordance with the mandate of the Constitution ? We will consider these propositions in the order in which they are stated.

It was conceded that the city comes under the general Act of May 23d, 1874, P. L., 230, entitled " An Act dividing the cities of this State into three classes," &c., clause 1 of § 20 of which authorizes cities of the third class " To levy and collect taxes for general revenue purposes, not to exceed ten mills on the dollar, in any one year, on all the real, personal and mixed property within the limits of said cities, taxable according to the laws of the State of Pennsylvania," &c.

It is very certain that an " occupation " is not real, personal or mixed property within the meaning of this Act. We must therefore look further for authority to levy this tax. It is said to be found in the supplement to said Act passed on March 18th, 1875, P. L., 15, the first section of which enacts : " That it shall be lawful for cities of the third class, in their corporate capacities, to provide by ordinance or ordinances for the assessment and collection of taxes not exceeding one per centum upon the assessed valuation, in any year, on all persons, real and personal property, and all other matters and things within said respective cities, taxable for state and county purposes," &c.

The terms of this Act appear sufficiently broad. It was contended, however, that as there is no state tax on " occupa-

tions," it is not enough to show that they are made by law taxable for county purposes. In other words, before the city can show that she can tax any species of property it must appear that such property is taxable both for state and county purposes. We regard this as a narrow view of the Act of 1875. It was evidently intended to authorize cities of the third class to levy a tax upon any species of property which is at the same time taxable for either state or county purposes. The state limits its taxation to few subjects. Real Estate is entirely exempt. If we sustain the contention of the appellants the city could not tax the real estate within its limits, and upon the same principle many other prolific sources of revenue would escape taxation altogether by the municipality. It could not raise revenue to light its streets or pay its policemen.

We are in no doubt as to the first proposition. The second presents a more serious question. Before I proceed to its discussion it is proper to dispose of the preliminary question of jurisdiction. It was urged that a court of equity will not interfere to restrain the collection of taxes, but will leave the party aggrieved to his remedy at law. This is true where the tax is lawfully assessed, or where the matters complained of are mere irregularities in the valuation or assessment; but where there is either a want of power to tax, or a disregard of the Constitution in the mode of assessment, we have no doubt of the power and the duty of a court of equity to interfere: St. Clair School Board's Appeal, 24 P. F. S., 256; Wheeler v. The City of Philadelphia, 27 Id., 338; Kitty Roup's Case, 32 Id., 211.

In view of the importance of this question it is essential to have a thorough understanding of the facts. They will be stated with greater detail than would have been necessary had there been a finding by a Master.

The bill avers and the answer of the city admits that the tax upon "occupations" was based upon the income from said occupations. The tax committee of councils in their circular addressed to the assessors enjoined them "to assess all offices and posts of profit, professions, trades and occupations at what you shall believe to be the actual yearly income arising therefrom."

The tax appears to have been levied under that portion of the city ordinance which provides that a tax shall be assessed on "all personal property, and all objects and things assessed as unclassified." Under this general provision the assessors were directed, as before stated, "to assess all offices and posts of profit, professions, trades and occupations," according to the income derived from them. There appears to have been

no attempt to divide these several subjects of taxation, but all were included under the general term of " occupation." Nor was there any attempt at classification. Just how it was done fully appears in the testimony taken by the Examiner. William Norris, one of the assessors, was examined and said :—

" Where I knew what a man's salary was I assessed him eighty per cent. of it. That was done by authority of the tax committee, who instructed me to assess salaries at eighty per cent. of their amount, and not in any case to assess an income, whether derived from dividends, money at interest or mortgages. In the case of persons not receiving salaries, merchants, manufacturers, and the like, I assessed them, with the exception of professional men, such as attorneys and physicians, at a sum equal to what they could employ a person to do their work for them. I did not assess merchants, manufacturers and the like upon the basis of their incomes in any case ; I was positively directed not to do so. Laboring men I assessed at not less than $100. I was obliged to assess them that much ; none less than $100. If not that, nothing at all. I did not observe the same rule in assessing laboring men that I did in assessing salaried men, to wit, at eighty per cent. of their salaries. Laboring men averaged from $100 to $200. . . . . . I made a distinction between income and occupation. I considered as income the result of some investment in real or personal property the principal of which paid tax. I considered as occupation what a man received as salary or earnings during the year."

William Tallman, assessor, said :—

" In making my assessment on occupations I considered that laboring men would be able to work 100 days in the year at $1 a day; so I assessed them at $100. . . . . . Mechanics, and those who I considered earned more than $1 a day, I assessed at $200. I did not assess laborers and mechanics at eighty per cent. of what I considered they earned. I observed no such basis with them. In the case of men who received monthly or yearly salaries, if I knew what they got, I assessed them at eighty per cent. of such amount. Those persons who received no salary or wages I also assessed with an occupation. Such persons I assessed upon no basis at all. . . . . . If a man had $50,000 in business, which I knew brought him a return of $10,000 a year, I would assess him at $8,000. . . . . . I assessed John H. Burrows, hatter, $500 ; I assessed him at that amount as being what I thought he could earn, and what his occupation would be worth ; D. H. Troxell, grocer, $200 ; I thought he could make that amount in his business, so I assessed him with an occupation of $200 ; John Kurtz, shoe merchant, $200 ; E. M. D. Levan, stoves, $500 ;

the committee reduced it to $300 ; I guess he was on the committee ; Thomas Polleys, wholesale grocer, $300 ; I put him at $300 and the committee raised it to $600 ; I thought $300 was about what he was worth ; he was old and could not do much."

Frederick Graeff, another assessor, said :—

"I have men in here from $25 up to $1,200 or $1,400, and some men I did not assess at all. I will explain it. Old men or crippled, and not able to work, I did not assess at all. Men who earned $100 I assessed at $25, and so on. Laborers who earned from $300 to $400, I assessed at $100. Mechanics I generally assessed at $150 to $200. Merchants, and those who had stores, I ascertained as nearly as possible how much, after paying all expenses of their business, not including family expenses, their profit would be, and I then assessed them accordingly, deducting a certain percentage, so as to equalize them with salaried men. I deducted their living expenses from their profits. In the case of salaried men I ascertained the amount of salary they received, and then deducted as near as possible their living expenses for themselves and their families. Suppose a man received a salary of $1,000. I deducted say $200 or $300 for living expenses. I made no difference in cases where the family was larger than in others."

It is needless to multiply these extracts from the testimony. A number of other assessors were examined, with like result. Each appears to have had his own crude notions of his duty, and to have made his assessments according to his ideas of equity. No fixed rule seems to have prevailed among them. The assessment upon " occupations " is hopelessly, incurably vicious. The plain mandate of the Constitution has been wholly ignored. It is in direct violation of § 1, Article IX., which requires that " All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax," &c.

The learned Judge of the court below failed to see in the evidence anything like want of uniformity in the assessment of this tax. This, however, is more in the nature of a conclusion of law upon the testimony than as a finding of fact. He says : " It has not been shown that any occupations have been exempted from the assessment of a tax under the Act of March 18th, 1875, nor that there has been any discrimination in the mode of assessment. If the tax had been restricted to only certain kinds of occupations, or to a particular class, and others had been exempted therefrom, the inequality and want of uniformity would be manifest. But nothing of the kind appears in the evidence."

These views of the learned court are well enough as far as

they go, but they do not come to the proper standard of uniformity.   However they might have been regarded prior to the adoption of the present Constitution, they do not conform to the requirements of the organic law as it exists at the present time.   That requires not merely that there shall be no exemption of persons or classes, but that upon persons and classes the tax shall be uniform.   Thus in levying a tax upon "occupations," a tax of $100 upon every person having a known occupation would be uniform.   But what uniformity is there in laying an "occupation" tax of $100 upon A. and a like levy of $200 upon B., the occupation of each being similar ? The answer, and the only one that can be urged is, that B. earns double the amount that A. does.   This brings us at once to a vice underlying the whole case.   Under the guise of an "occupation" tax, the city of Williamsport has levied, and is seeking to collect, an income tax.   Of all forms of taxation this is the most odious to the American people.   It was submitted to during the war from a feeling of patriotism in view of the great financial strain to which the country was subjected.   But when no such cause exists there is little excuse for imposing such an obnoxious burden ; still less ought it to be permitted without authority of law, and under the cloak of a tax upon occupations.

The tax we are considering is especially odious from the fact that it assumes to tax the income derived from labor and exempts the income derived from capital.   This will be understood by a reference to the testimony which I have cited, from which it appears that in assessing the value of a laboring man, a clerk, a lawyer, a physician, or a clergyman, the value of his occupation was fixed by reference solely to the income he derived, or was supposed to derive, from it ; while upon the banker, the merchant, or the manufacturer, no such rule was adopted ; he was assessed at what it would cost to hire a clerk to perform his duties.   Yet so crudely was the matter done, that there appears to have been no uniformity even in the want of uniformity.   This will appear by an examination of Mr. Graeff's testimony.

The power to levy an occupation tax gave the city no right to levy an income tax.   It gave the assessor no authority to inquire into the income of any one, nor to base anything upon a refusal to answer such questions.   The inquiry itself was impertinent and unlawful.

It may be asked how an occupation is to be assessed, and how is the constitutional mandate to be complied with ?   The answer is not difficult.   A tax of $100 upon all occupations would be uniform.   We are at once confronted with the objection that it would be unjust to tax the occupation of a

[Theyken v. Howe Machine Co.]

laborer the same amount as a merchant, a physician, or a law-yer. The injustice of such an exercise of the taxing power may be conceded, without in any degree impairing the force of the argument. The objection is one that appeals more to the legislative than to the judicial department of the govern-ment. The proper result may possibly be reached by classifi-cation. Thus, it may be that physicians, lawyers, clergymen, merchants, bankers, manufacturers, mechanics, &c., may be classified, and a uniform occupation tax assessed upon each class. But it will not do to tax one member of a class $100 and another member of the same class $1,000, upon the sup-position, or even upon the fact, that the one earns more than the other. An " occupation " tax is peculiar in its character. It is not a tax upon property, but upon the pursuit which a man follows in order to acquire property and support his fam-ily. It is a tax upon income in the sense only that every other tax is a tax upon income ; that is to say, it reduces a man's clear income by the precise amount of the tax. But it is an income tax in no sense. It will be time enough to assess an income tax when the legislature authorizes it ; at present no such authority exists.

> The decree is reversed, and it is ordered that the record be remitted to the court below with instructions to issue an injunction as prayed for in the bill ; the costs in this court and in the court below to be paid by the city of Wil-liamsport, appellee.