Isaly Dairy Company *v.* Pittsburgh, Appellant.

Argued October 6, 1954. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Robert Engel,* Assistant City Solicitor, with him *J. Frank McKenna, Jr.,* City Solicitor, for appellants.

*Jerome C. Bachrach,* for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, November 8, 1954:

The question is whether the Act of June 25, 1947, P. L. 1145, as amended by the Act of May 9, 1949, P. L. 898, authorizes the City of Pittsburgh to impose a mercantile license tax on receipts from the sale of ice cream and cottage cheese manufactured in the City but sold by the manufacturing company in its own

retail stores situated in the City but in locations apart from the place of manufacture.

An ordinance of the City of Pittsburgh of December 1, 1947, as amended, imposed a mercantile license tax of 2 mills on sales by retail dealers. In defining "retail dealer" or "retail vendor" it provided that those terms should not include "any person vending or disposing of articles of his own growth, production or manufacture for shipment or delivery from the place of growth, production or manufacture thereof." It will be noted that it thus failed to exempt sales of manufactured articles made other than at the place of manufacture.

The Isaly Dairy Company, which manufactures ice cream and cottage cheese, conducts some 25 retail stores at various locations in the City of Pittsburgh at which it sells its products either for consumption on the premises or to be taken out in packages. It resists the imposition by the City of a mercantile license tax on its own products thus sold at retail, admitting, of course, its liability for payment of the tax on other goods sold by it in such retail stores. The City having made a deficiency claim for the year 1953 to cover the tax on the Company's manufactured products sold in these stores, the Company appealed from such additional assessment to the County Court of Allegheny County, which sustained the Company's position in regard to the City's deficiency claim for the year 1953 and also ordered the City to refund to the Company the overpayments of similar taxes for the years 1950, 1951 and 1952. From that order the City now appeals.

The Act of June 25, 1947, P. L. 1145, empowered certain political subdivisions, including cities of the second class, to tax persons, transactions, occupations, privileges and personal property within the limits of the political subdivision not subject then or thereafter

to a State tax or license fee. This Act did not provide for any exemption of manufacturers or articles of manufacture. But in the amendatory Act of May 9, 1949, P. L. 898, it was provided that such political subdivisions should not have authority "to levy, assess and collect a tax on goods and articles manufactured in such political subdivision . . . or on any privilege, act or transaction related to the business of manufacturing, . . . ."

There can be no question but that, prior to the enactment of the amendatory Act, the City of Pittsburgh had authority to impose a tax on sales by a manufacturer even if made at the place of manufacture, since, as already stated, the 1947 Act provided for no exemption in that regard. But an obviously different situation arose when the 1949 Act was passed forbidding the imposition of a tax on goods and articles manufactured in the political subdivision or on any privilege, act or transaction related to the business of manufacturing. It would seem too clear for argument that the sale by a manufacturer of the article manufactured is a "privilege, act or transaction related to the business of manufacturing." In ordinary parlance a manufacturer's business includes the purchase of the raw material, the mechanical process of manufacturing it into some other article or product, and the sale of such article or product, from which sale the profit of the manufacturer is derived. Certainly the sale of the product is an act or transaction related to the business of manufacturing; were it not so it would be difficult to understand what the legislature intended by the use of those words.

While, of course, the legislature may, if it see fit, tax manufacturers on the products of manufacture, the historical policy of the State has always been to encourage manufacturing by grants of exemption, either

partial or total, from the imposition of various forms of taxation, and it would seem clear that by the provision in the Act of 1949 here under discussion the State did not wish to give authority to its political subdivisions to impose such taxes. Incidentally it may be noted, as indicating this to have been its intention, that in the Act of June 20, 1947, P. L. 745, which imposed a mercantile license tax on vendors or dealers in goods, wares and merchandise in school districts of the first class, it was provided not only that the term "dealer" or "vendor" should not include "any mechanic who keeps a store or warehouse at his place of manufactory or workshop in which he sells only his own manufactures," but also "any person vending or disposing of articles of his own growth, produce or manufacture."

The City relies principally upon the fact that in the case of certain prior statutes imposing mercantile license taxes it was held that, although one who kept a store or warehouse at his shop or manufactory for the purpose of vending exclusively his own manufactures was not a vendor or dealer liable to taxation, if he carried on a business of selling his products at a store or warehouse apart from his manufactory he became a vendor or dealer within the meaning of those terms in the statutes and as such subject to the taxation which they imposed.[1] But neither such statutes nor such decisions thereunder are pertinent to the present situation where the language of the statute limiting the authority of the political subdivision in regard to taxing any privilege, act or transaction related to the

---

[1] For example: *Commonwealth v. Thomas Potter, Sons & Co.*, 159 Pa. 583, 28 A. 492; *Commonwealth v. Bay State Milling Co.*, 312 Pa. 28, 32, 167 A. 307, 308, 309; *Pittsburg Brewers' and Bottlers' Supply Company's Mercantile Tax*, 38 Pa. Superior Ct. 121, 127.

business of manufacturing leaves little, if any, room for doubt as to its meaning. In *H. J. Heinz Co. v. Pittsburgh*, 170 Pa. Superior Ct. 435, 87 A. 2d 96, which also involved a construction of the amendatory Act of May 9, 1949, P. L. 898, as bearing upon this same ordinance of the City of Pittsburgh, it was said, p. 439 (A. p. 98), in an opinion by Judge HIRT, that "the sale of the products of manufacture is an essential part of the business of manufacturing; the power to manufacture implies the power to sell what it thus produced. . . . There is no merit therefore in the city's contention that when appellant sold its own products at a place other than the factory where they were produced it abandoned the role of manufacturer and became a dealer subject to be taxed as such under the ordinance in question."

It is our conclusion that the City of Pittsburgh has not had the authority, since the Act of May 9, 1949, P. L. 898, to tax the receipts from the sale of products manufactured in the City even if sold by the manufacturer in its own retail stores in locations apart from the place of manufacture.

Order affirmed.