## Miller v. York Imperial School District

*Stock & Leader*, for plaintiffs.

*Laucks & Monroe*, for defendants.

SHADLE, J., May 23, 1960.—Both of the above cases seek the same relief and involve identical issues. They were argued together, and both will be disposed of by one adjudication.

Plaintiff's complaints ask the court to declare the invalidity of a resolution of defendant school district imposing a tax on the occupations of plaintiffs, and to restrain the collection of such tax. Answers were filed by defendants denying certain allegations of the complaints. The facts were agreed to by counsel for the parties and are set forth in a stipulation filed herein.

### Findings of Fact

1. Plaintiffs are persons domiciled within the geographical area comprising defendant school district.

2. Defendant school district is a third class school district in York County.

3. The geographical area of defendant school district is coterminous with the geographical area of York Township, Springfield Township and Loganville Borough.

4. Defendant Kaltreider, as treasurer of York Township, collects the taxes for the portion of defendant school district within York Township.

5. Defendant Culbertson is the assessor of York Township.

6. Prior to May 1, 1959, the chief assessor of York County gave written instructions to all local assessors, including defendant Culbertson and his predecessor in office, to "assess" all occupations of residents over the age of 21 years within their districts as follows, and

that "any occupation not enumerated . . . (in said list) shall be rated as similar or belonging to some one of the listed classes":

| | | | |
|---|---|---|---|
| Alderman | $150 | Hotel Keepers | $300 |
| Attorneys-at-law | 500 | Housekeepers | 50 |
| Bankers | 300 | Invalids | 10 |
| Brokers | 300 | Justice of the Peace | 150 |
| Butchers | 200 | Laborers | 50 |
| Cigarmakers | 50 | Manufacturers | 300 |
| Clerks | 50 | Mechanics | 75 |
| Constables | 150 | Merchants | 200 |
| Engineers | 200 | Physicians | 500 |
| Farm Hands | 50 | Preachers | 100 |
| Foremen | 100 | Storekeepers | 200 |
| Gentlemen | 75 | Superintendents | 200 |
| Farmers | 50 | Teachers | 100 |
| Gentlewomen | 75 | Tenant Farmers | 50 |

7. Prior to May 1, 1959, defendant Culbertson and his predecessor in office, as well as the other local assessors of the townships and borough within defendant school district, gathered and reported to the chief assessor of York County the data and information necessary to assess the occupations of the plaintiffs and the other residents of such municipalities.

8. Prior to May 1, 1959, the assessments of the occupations of plaintiffs and other residents of the townships and borough within defendant school district were entered in the 1959 tax duplicates by the chief assessor of York County, and such duplicates were transmitted to defendant Kaltreider and the other tax collectors of such municipalities.

9. On May 27, 1959, defendant school district adopted a resolution imposing for general school purposes for the fiscal year 1959-60 a tax in the amount of 200 mills on the assessed value of occupations of all adult residents of the school district.

10. The occupations, assessments and occupation taxes entered in the 1959 tax duplicate for plaintiffs are as follows:

| Name and Occupation | Assessment | Tax |
|---|---|---|
| George N. Miller, Jr., laborer | $ 50 | $ 10 |
| Louise G. Miller, housewife | 50 | 10 |
| W. Scott Bayless, laborer | 50 | 10 |
| Nathan F. Watkins, salesman | 100 | 20 |
| Madelyn M. Watkins, housewife | 50 | 10 |
| Bruce W. Bigoney, salesman | 100 | 20 |
| Frances B. Bigoney, housewife | 50 | 10 |
| Gerald L. London, doctor | 500 | 100 |
| Richard E. Small, doctor | 500 | 100 |
| D. G. Fullman, doctor | 500 | 100 |
| Raymond S. Hovis, merchant | 200 | 40 |
| K. L. Matchett, laborer | 50 | 10 |
| Maynard R. Kimes, farmer | 50 | 10 |

11. The assessments of occupations in the municipalities included within defendant school district vary between the following limits:

| | | | |
|---|---|---|---|
| Contractors | From | $75 to | $300 |
| Mechanics | " | 50 " | 75 |
| Carpenters | " | 50 " | 75 |
| Clerks | " | 50 " | 75 |
| Teachers | " | 75 " | 100 |
| Salesmen | " | 75 " | 100 |

12. The assessments of identical occupations of residents of Springfield Township have been varied in accordance with the estimate of the local assessor of the net income of such residents.

13. Included within the assessments of the municipalities in question are the following occupations and valuations:

| | |
|---|---|
| Salesman, principal | $100 |
| Painter, beautician | 75 |

| | |
|---|---|
| Poet | 100 |
| Writer | 100 |
| Teller | 100 |
| Meter reader | 75 |
| Bricklayer | 75 |
| Carpenter, undertaker | 75 |
| Student | 50 |
| Cashier | 200 |
| Contractor | —— |

14 The occupation assessments for the fiscal year 1959-60 were the same as those for the last previous fiscal year of 1958-59.

15. The sole notification given to plaintiffs of their occupation assessments for the fiscal year 1959-60 consisted of their 1959 tax bills which were mailed to them on or about June 1, 1959, and which contained a statement of the tax rate and amount of tax, but made no reference to the assessed occupation.

16. All of plaintiffs obtained actual notice of their occupation assessments for the fiscal year 1959-60 by personal inquiry.

17. Four of plaintiffs practice their occupations wholly within defendant school district, two of them do so "mainly" within the district, three of them do so "mainly" outside the district, and four of them do so wholly outside the district.

18. The occupations of plaintiffs are described as follows:

| Name and Occupation | Type of Employment |
|---|---|
| George N. Miller, Jr., equipment tester and developer | Employe |
| Louise G. Miller, wife | —— |
| W. Scott Bayless, equipment tester and developer | Employe |

| | |
|---|---|
| Nathan F. Watkins, wholesale appliance salesman | Employe |
| Madelyn M. Watkins, wife | —— |
| Bruce W. Bigoney, wholesale drug salesman | Employe |
| Francis B. Bigoney, wife | —— |
| Gerald L. London, optometrist | Self-employed |
| Richard E. Small, medical doctor | Self-employed |
| D. G. Fullman, osteopathic doctor | Self-employed |
| Raymond S. Hovis, florist | Self-employed |
| K. L. Matchett, Jr., druggist | Self-employed |
| Maynard R. Kimes, farmer | Self-employed |

19. The budget of defendant school district for the fiscal year 1959-60 estimates the amount of revenue to be received for that year from the tax in question at $68,584 on a total of occupation assessments of $381,025, which amount of tax is 18 percent of the total estimated taxes and 7 percent of the total estimated income of said school district for that year.

## Discussion

Plaintiffs base their claim of invalidity of the tax resolution upon three principal grounds: (1) It violates the "uniformity" clause of the Pennsylvania Constitution; (2) it is based upon an invalid assessment, and (3) it purports to tax certain occupations which cannot by law be taxed.

The issue of constitutionality is raised under article IX, sec.1, of the Pennsylvania Constitution. This provides that "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, . . ."

Plaintiffs contend that this section is violated by the fact that the assessments of certain occupations in the several municipalities included within defendant school district vary substantially. Thus, the occupation of "contractor" has been valued at from $75 to

$300, those of "mechanic," "carpenter" and "clerk" from $50 to $75, and those of "teacher" and "salesman" from $75 to $100. In addition, it is admitted that the assessments of identical occupations of residents of Springfield Township, one of the constituent municipalities of defendant school district, have been varied in accordance with the estimate of the local assessor of the net income of such residents.

There is no question that such a practice renders invalid the assessments complained of. In Banger's Appeal, 109 Pa. 79 (1885), it was held that an occupation tax levied upon assessments of occupations based upon the amount of earned income of residents was void as being, in effect, a graduated income tax. Bearing upon the specific issue here involved, the court there said:

"It may be asked how an occupation is to be assessed, and how is the constitutional mandate to be complied with? The answer is not difficult. A tax of $100 upon all occupations would be uniform. We are at once confronted with the objection that it would be unjust to tax the occupation of a laborer the same amount as a merchant, a physician, or a lawyer. . . . The proper result may possibly be reached by classification. Thus, it may be that physicians, lawyers, clergymen, merchants, bankers, manufacturers, mechanics, etc., may be clasified, and a uniform occupation tax assessed upon each class. *But it will not do to tax one member of a class $100 and another member of the same class $1,000, upon the supposition, or even upon the fact, that the one earns more than the other."* (Italics supplied.)

The requirement of uniformity is not met merely by imposing a flat tax of a uniform rate throughout the taxing district. The question is whether the ultimate *tax burden* is uniform upon all the members of the same class. Simple mathematics shows that at a tax

rate of 200 mills, a contractor whose occupation is assessed at $75 will pay a tax of $15, whereas a contractor whose occupation is valued at $300 owes a tax of $60. The constitutional mandate of uniformity requires substantial equality of tax burden, and the imposition of taxes which are to a substantial degree unequal in their operation or effect upon similar kinds of business or property, or upon persons in the same classification, is prohibited: Allentown School District Mercantile Tax Case, 370 Pa. 161 (1952).

The question remains, however, whether the error in certain valuations requires this court of equity to declare the invalidity and enjoin the enforcement of the entire tax resolution. A court of equity will not interfere to restrain the collection of taxes where the tax is lawfully assessed, or where the matters complained of are mere irregularities in the valuation or assessment. Banger's Appeal, supra. It is true that in that case the entire tax act was held unconstitutional. However, the reason for that decision was that there was no attempt to make any classifications of occupations other than on the basis of income, and every one of the occupations was specifically valued according to income, leaving no valid portion of the tax act to be operative. This is not the situation here, in which erroneous valuations have occurred in only six of 28 occupation classes, and these plaintiffs possess only one of such improperly valued occupations.

Defendants contend that plaintiffs' remedy for improper valuations is by way of appeal from such assessments, rather than by a suit to invalidate the entire tax resolution. An act will not be declared unconstitutional on the ground that, in some cases, unfair and illegal results will be brought about, where a remedy is provided by which the taxpayer may be relieved from the injustice or illegality, and a taxpayer must pursue the remedy granted him by the

statute before he will be heard to complain that it is unconstitutional in its application to him: Turco Paint and Varnish Co. v. Kalodner, 320 Pa. 421 (1936).

The situation here is no different from one in which a real estate owner objects to the assessment of his property because his neighbor's property, which is in all respects identical, has been assigned a lower value. In such case there is no question but that the aggrieved taxpayer's remedy is by way of appeal from his assessment. Should his appeal be denied in the first instance, he then has recourse to the courts, and may *in that proceeding* raise the constitutional problem of uniformity as to his particular assessment.

It is to be noted that there is no question here as to the method of assessment and taxation provided by the resolution. The Act of June 25, 1947, P. L. 1145, sec. 1, as amended, 53 PS §6851, by its express terms authorizes third class school districts to levy a tax on occupations. The resolution in question imposes the tax on the assessed value of occupations, and defines "assessed value" as the value "determined by the county assessor of York County, Pennsylvania." Section 602 of The Fourth to Eighth Class County Assessment Law of May 21, 1943, P. L. 571, as amended, 72 PS §5453.602, provides that "It shall be the duty of the assessor to assess, rate and value all subjects and objects of local taxation, whether for . . . school . . . [or other] purposes . . ." Section 201, as amended, of the same act, 72 PS §5453.201, states that such subjects and objects to be assessed shall include "All salaries and emoluments of office, all offices and posts of profit, professions, trades and occupations. . . ."

The objections of plaintiffs are really aimed at the alleged improper manner in which the lawfully authorized assessment process was carried out.

"A distinction has been taken between the cases in which over-assessment or inadequate exemption has been alleged and the cases in which the property owner denies the power to levy any tax. In the former, it has been held that the remedy is by appeal from the assessment, as the statute provides, and not in equity; in the latter equity affords the remedy . . . That this is not a case of denial by a property owner of the power to levy any tax is apparent. Here the plaintiff contends that the method of assessment is unconstitutional and disregards the statutes granting the power to assess . . . their remedy is by appeal from the assessment.": Bradford Twp. Assn. v. McKean County Bd., 370 Pa. 468, 470 (1952).

Sections 604 and 701, as amended, of The Fourth to Eighth Class County Assessment Law, supra, 72 PS §5453.604 and 72 PS §5453.701, contain detailed and comprehensive provisions for an aggrieved taxpayer to appeal from his assessment, and provide the remedy for situations such as this. These sections require the giving of certain notice of assessments in order that the right of appeal might be availed of. The stipulation of the parties asserts that no such notice was given in this case, but that each of these plaintiffs had actual notice of their assessments by personal inquiry. Such actual notice obviates the necessity of the formal notice required by the act: York & Foster, Inc., Tax Assessment Case, 163 Pa. Superior Ct. 602 (1949).

Accordingly, we hold that, although certain of plaintiffs' occupations were improperly valued, this fact furnishes no basis for declaring the tax resolution unconstitutional nor for enjoining its enforcement.

Plaintiffs' next claim that the tax lacks the uniformity required by the Pennsylvania Constitution because the classification of occupations is unreason-

able when measured by the amount of income they produce.

The general rule is that classification for tax purposes is proper where it is made according to reasonable, just and practical rules, drawn from experience, and where it rests upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and where the classification is sound, the tax imposed is uniform if it falls equally upon all members within such class: Dole v. Phila. 337 Pa. 375 (1940); Allentown School District Mercantile Tax Case, 370 Pa. 161 (1952).

It is true that, for many purposes, the value of an occupation may be measured by the income it is capable of producing. Thus, an occupation has been referred to as "the pursuit which a man follows in order to acquire property and support his family": Banger's Appeal, supra, p. 95. However, economic return is not the sole measure of the value of an occupation. Webster's Unabridged New International Dictionary, 2d ed., defines occupation as "that which occupies, or engages, the time and attention; the principal business of one's life; vocation; business," and states that "one's occupation is that to which one's time is devoted, or in which one is regularly or habitually engaged."

It is apparent that other factors than income affect the value which may be attributed to an occupation. These may include social status, historical attributes, type, kind and quantity of work required, degree of education and training demanded, and many other such real or fancied social and economic distinctions. The direction of the assessment law, supra, sec. 602, as amended, 72 PS §5453.602, that the assessment shall be at "actual value" and "at such rates and prices for which the same would separately bona fide

sell," has no application whatever to the valuation of such an intangible concept as an occupation.

Under these circumstances, we are not disposed to hold that the classifications of occupations here involved and the values assigned to them are so unreasonable as to render the tax resolution unconstitutional by reason thereof. In the construction of tax legislation, the reasonableness of classification is for the legislature in the first instance, and unless there is no rational basis for it the courts will not interfere: Phila. Assn. v. Philadelphia, 139 Pa. Superior Ct. 560, 567 (1939); Commonwealth v. Pa. T. & F. M. Cas. Ins. Co., 339 Pa. 62, 64 (1940).

"Taxation is a practical and not a scientific problem. . . . There is no such thing as perfect uniformity and equality in taxation. The best that can be done, and all that is required, is that it should approximate uniformity and equality as nearly as possible . . .": Sablosky v. Messner, 372 Pa. 47, 54 (1952).

Plaintiffs also contend that the tax resolution does not have a uniform effect because it unreasonably excludes residents under 21 years of age. What has heretofore been said with reference to the propriety of classifications in tax legislation applies with equal force to this contention.

"Classification for the purpose of taxation may be based on the existence of differences recognized in the business world, on the want of adaptability of the subjects to the same method of taxation, upon the impracticability of applying to them the same methods so as to produce justice and reasonably uniform results, or upon well grounded considerations of public policy": Coe v. Duffield, 185 Pa. Superior Ct. 532, 535 (1958).

In excluding minors, the resolution follows the analogy of The Fourth to Eighth Class County Assessment Law, supra, sec. 201, as amended, 72 PS

§5453.201. This subjects to taxation "All . . . occupations, and all persons over the age of twenty-one years who do not follow any occupation or calling . . ." The resolution also recognizes the time-honored common-law principle that the fruits of the occupations of minors belong to their parents and not to themselves. If an individual need not be considered a "person" for tax purposes until he has attained his majority, we see nothing unreasonable in freeing his occupation from the burden of taxation until he has achieved the same status.

The second major contention of plaintiffs is that there was no valid assessment of occupations on which the tax levy could be based. They claim that, although the chief county assessor gave the local assessors the written instructions on assessing occupations which are set forth in the findings of fact herein, he at the same time "orally instructed . . . (them) that they were free to do what they wished in all respects insofar as the occupation assessments were concerned and that this (i.e., his) attitude was one of 'hands off'." The contention is that these facts, and the fact that different valuations were assigned the same occupation and new categories were added, indicates that the chief assessor made no assessment, and delegated this duty to the local assessors.

Section 201, as amended, 72 PS §5453.201, of the general assessment law, supra, requires occupations to be valued and assessed. Section 506, as amended, 72 PS §5453.506, makes it the duty of each local assessor "to gather and report to the chief assessor all data and information necessary to assess . . . in accordance with . . . all lawful regulations prescribed by the board (for the assessment and revision of taxes)." Section 302, as amended, 72 PS §5453.302, authorizes and directs the board to "adopt rules and regulations . . . which shall govern the . . . local elected

accessors . . ." Section 601, as amended, 72 PS §5453.601, then states that ". . . the chief assessor shall, from the returns made by the local assessors, prepare and submit to the board . . . an assessment roll . . . together with the value placed upon . . ." each subject of local taxation. Finally, section 602, as amended, 72 PS §5453.602, categorically makes it the ". . . : duty of the chief assessor to assess, rate and value all subjects and objects of local taxation . . ."

The written instructions given by the chief assessor to the local assessors on assessment of occupations apparently were rules and regulations issued in accordance with section 302. These instructions obviously were that where the local assessors found residents to have one of the occupations listed, they were to report that fact to the chief assessor together with the appropriate valuation listed in the table. Such an instruction is no different than one, for example, advising that farm land owned by local residents should be listed at so much per acre, improved land at another figure, and woodland at still a third amount per acre. In either case, the local assessors merely are gathering and reporting data and information necessary to assess. In neither situation, in the light of the act, can the local assessors by so doing be considered to be making the assessment.

On the other hand, the act of the chief county assessor in entering the assessments and valuations in the local tax duplicates can be construed in no other way than as the making of the assessment in accordance with the mandate of the act. The facts do not disclose that he prepared and submitted to the board a separate assessment roll, but the figures entered in the local tax duplicates could have been copied from no other source. Regardless of the mechanics used, it is clear that the responsibility for making the

actual assessment is on the chief assessor, and that he assumed it under the facts here involved.

This conclusion is not altered by any vague oral statements about leaving the local assessors "free to do what they wished in all respects," nor that the chief assessor's "attitude was one of hands off." Even though the local assessors may have "done what they wished," the chief assessor was unable under the law to adopt a "hands off" attitude, and actually did make the assessments under the facts disclosed. Though the local assessors gathered and reported several different valuations on identical occupation classes, the chief assessor assessed them as such.

Neither is the addition of new classifications to the chief assessor's list any indication that the act of assessment was performed by the local officials rather than the chief assessor. The reporting of such additional occupations was in accordance with the written instructions that "any occupation not enumerated . . . shall be rated as similar . . . to some one of the listed classes." The adoption and listing of such new classes by the chief assessor constituted an assessment by him no less than if they had been included in the original list.

Finally, plaintiffs claim the tax resolution is invalid because it purports to tax certain occupations which cannot by law be taxed. The contention is made that occupations practiced outside the municipality cannot be taxed by defendant school district in which the taxpayers reside. Plaintiffs point to the provisions of the enabling Act of June 25, 1947, P. L. 1145, sec. 1, as amended, 53 PS §6851, under which the tax resolution was adopted. This act permits the imposition of taxes ". . . on persons, transactions, *occupations*, privileges, subjects and personal property *within the limits of such political subdivisions . . .*"

There is no question in our mind that an occupation must be "within the limits" of a municipality before it may be taxed by the latter. However, the question remains, what is the situs of an occupation? On this point, cases dealing with the situs of a "transaction" involving the transfer of real property are no help, nor is the 1955 amendment to the Act of 1947, supra, by which such transactions were made taxable where the real property is situated. The legislature has given no such assistance in the case of occupations. It does not follow from this legislative silence, however, that occupations may be taxed only where they are practiced, rather than where their owners reside, as plaintiffs claim. In fact, a legislative declaration to the contrary may be gathered from one of the limitations of the Act of 1947, supra, in prohibiting a tax on "salaries, wages, commissions, compensation and earned income of nonresidents of the political subdivision." It might thus be argued that both the earnings of taxpayers and the occupations producing such income are to be taxed where the taxpayers reside, not where they perform their daily work.

We believe that an occupation, being an intangible concept, a "pursuit which a man follows," "that which occupies, or engages, the time and attention," has its situs at the place where its owner resides, rather than at the place where he does his work or receives his compensation, at least for the purposes here involved. To hold to the contrary would lead to endless practical difficulties. Physicians, attorneys and preachers calling on patients, clients and parishioners would have to segregate their fees or allocate a portion of the assessed values of their occupations to the municipalities in which they worked. Butchers with travelled routes, constables serving legal writs, engineers, laborers, mechanics, foremen and superintendents moving about to various work projects,

all would have to be assessed for the occupation tax wherever and to the extent they earned income. In each of the examples cited the practical problems of tax reporting, collection and enforcement would render taxation of occupations impossible.

Plaintiffs next contend that the occupation of farmers cannot be taxed under the resolution. This argument is based on that portion of the Act of 1947, supra, which provides that ". . . local authorities shall not have authority by virtue of this act . . . to levy, assess and collect a tax on . . . any privilege, act or transaction related to . . . the production, preparation or processing of . . . farm products . . . by farmers with respect to the . . . products of their own . . . growth . . ."

The claim is that a tax on the occupation of a farmer is a tax on a privilege, act or transaction related to the production, preparation or processing of farm products by farmers with respect to the products of their own growth.

The same argument was raised by manufacturers as to a mercantile tax levied under the same Act of 1947 upon the receipts from the sale of manufactured products. As to this, the Supreme Court said:

"It would seem too clear for argument that the sale by a manufacturer of the article manufactured is a 'privilege, act or transaction related to the business of manufacturing'. . . . While, of course, the legislature may, if it see fit, tax manufacturers on the products of manufacture, the historical policy of the State has always been to encourage manufacturing by grants of exemption, either partial or total, from the imposition of various forms of taxation, and it would seem clear that by the provision in the Act of 1949 [which added the manufacturing exemption to the Act of 1947] here under discussion the State did not wish to give authority to its political subdi-

visions to impose such taxes": Isaly Dairy Co. v. Pittsburgh, 379 Pa. 108, 111 (1954).

If a tax on only the sale of manufactured products is invalid as a tax on a privilege, act or transaction related to manufacturing, it seems obvious that a tax on the entire occupation of farming is in reality a tax on every privilege, act or transaction related to the production, preparation, or processing of farm products by farmers. The wisdom or propriety of granting such exemption to farmers is not a matter committed to the courts. We, therefore, hold that the resolution in question is invalid insofar as it purports to levy a tax on the occupation of farmers under the Act of 1947, supra.

Plaintiffs also claim that the occupation of housewife cannot be taxed because it produces no income and therefore has no value. As previously pointed out, the concept of "occupation" is not limited to those vocations producing monetary return, but includes the activity to which one's time is devoted or in which one is regularly or habitually engaged. In this sense we have no difficulty in finding that housewives do indeed have occupations of sufficient value to support a tax assessment and tax levied thereon.

Plaintiffs conclude by contending that because residents with outside occupations, farmers, housewives should be excluded from the tax, these groups form so large a portion of the tax base that the entire resolution must fall. However, we have herein held that only the occupation of farmers must be deleted from the tax. There is no way of determining from the record how many persons are thereby excluded. Only one of plaintiffs possesses the occupation of farmer.

Section 7 of the resolution is a severability clause, providing that if "the tax, or portion thereof, imposed on any person . . . shall be held . . . to be in violation of the laws . . . the decision shall not . . . invalidate

the right to impose tax, or the validity of the tax . . . on any other person . . ."

Section 55 of The Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §555, prescribes the rule in the case of acts of the assembly, which applies with equal force to local legislation, that provisions of a law shall be severable, "unless the court finds the valid provisions of the law are so essentially and inseparably connected with, and so depend upon, the void provision, that it cannot be presumed the Legislature would have enacted the remaining valid provisions without the void one; or unless the court finds the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent."

As stated in Commonwealth v. Columbia Gas & Elec. Corp., 336 Pa. 209, 223 (1939), "a general revenue statute should never be declared inoperative in all its parts because a particular part relating to a distinct subject may be invalid."

We, therefore, find that the tax in question is not so essentially and inseparably connected with and dependent upon its application to the occupation of farmers, nor is its application to other occupations so incomplete and incapable of being executed, as to compel the conclusion that the resolution would not have been enacted had farmers been excluded.

### Conclusions of Law

1. The tax resolution adopted by defendant school district does not violate article IX, sec. 1, of the Pennsylvania Constitution.

2. The method of assessment provided and used under the resolution is legally valid.

3. The tax imposed under the resolution is valid as applied to the occupations of residents of defendant school district practicing their occupations outside the school district and as to housewives.

426

4. Said tax is invalid as applied to the occupations of farmers.

5. Defendants Kaltreider and the school district should be enjoined from collecting said tax, or taking any action to collect or enforce the same, insofar as it applies to the occupation of farmers.

*Decree Nisi*

And now, to wit, May 23, 1960, at 9 a.m., e.s.t., it is ordered, adjudged and decreed that defendants, C. Mervin Kaltreider and York Imperial School District, be, and they are hereby enjoined from collecting, or taking any action to collect or enforce, the occupation tax imposed by the resolution adopted May 27, 1959 for the fiscal year 1959-60, insofar as said tax applies to the occupation of farmers.