## Davidson Transfer and Storage Company et al. v. City of Philadelphia et al.

*Shertz, Barnes & Shertz,* for plaintiffs.

*A. Wernick,* Deputy City Solicitor, and *Abraham L. Freedman,* City Solicitor, for defendants.

LEWIS, P. J., and CARROLL, J., May 22, 1953.—In these further equity proceedings to restrain the City of Philadelphia from enforcing its Mercantile License Tax Ordinance adopted December 9, 1952, we have been called upon once again to determine the validity of the ordinance with respect to various corporate and noncorporate business enterprises in Philadelphia.

Plaintiffs who have brought these actions include the mutual and stock insurance companies located in the city, as well as the Bell Telephone Company, the trucking companies and the independent taxicab owners doing business in Philadelphia, the latter three being subject to the Public Utlity Law. With the exception of the Bell Telephone Company complaint, the

suits are class actions, and therefore our decision will apply to all members of the enumerated classes.

Because of the similarity of the issues presented, the cases were consolidated for argument on the questions of law involved, the facts having been agreed upon by stipulations which we have approved, and following our procedure in Philadelphia Saving Fund Society et al. v. City of Philadelphia, decided April 17, 1953, we adjudicate these several actions in this single opinion.

The deputy city solicitor in his brief and oral argument reasserted the city's contention that the Sterling Act of August 5, 1932, P. L. 45, is no longer in effect, and that the basic taxing power of the city is found in the Act of 1864 and in the General County Assessment Law of May 22, 1933, P. L. 853, which statutes he contends gives Philadelphia the power to levy the mercantile tax. This contention was disposed of in our opinion in Philadelphia Saving Fund Society et al. v. City of Philadelphia, supra,█ and a reëxamination of the same arguments as well as the pertinent statutes and cases involved reaffirms our conviction that the Sterling Act is in full force and effect and that the Acts of August 25, 1864, P. L. 1030 and 1933 do not authorize or support the tax ordinance here involved. Accordingly, we reaffirm our decision in the Philadelphia Saving Fund Society case that the Sterling Act gave the city powers it did not possess under the Acts of 1844 and 1864, and that the Act of 1933 contemplates a system of taxation and assessment that is wholly different from this so-called mercantile tax. Thus, if the tax is to be sustained, it must fall within the grant of power contained in the Sterling Act.

Several new arguments were advanced by the city solicitor that require brief mention. He now asserts that the Act of 1864 alone gives the city the power to levy this tax, and cites Baltimore & Philadelphia Steamboat Co. appeal, 302 Pa. 364 (1931), in support of this contention. This case was decided before the County Assessment Act of 1933 was adopted and the significance of that fact is that the Act of 1864 merely provided a procedure for taxation and looked to the Act of 1844—which was repealed by the legislature after the decision in the Baltimore and Philadelphia Steamboat Company case, supra—for enumeration of the substantive subjects that could be taxed. Indeed, the Act of 1864 specifically incorporated the earlier law as part and parcel of its provisions. The Act of 1933 specifically repealed the Act of 1844, and reenacted in section 201 the same subjects of taxation contained in the earlier statute. Hence, if the Act of 1864 is construed alone we are faced with the anomalous situation wherein the city claims its power stems from an act which in turn depends upon a statute that is no longer law. We concluded, therefore, in the Philadelphia Saving Fund Society case, supra, that the only possible way to construe the Act of 1864 is in conjunction with the Act of 1933, which enumerates permissible subjects that counties and cities can now tax in lieu of the subjects provided for in earlier statutes, including the Act of 1844.

The city's eagerness to avoid the Act of 1933 is quite understandable, for the Mercantile Tax Ordinance does not follow the assessment or other detailed procedures required by that act. The city correctly cites Commonwealth v. Southern Pennsylvania Bus Company, 339 Pa. 521, for the proposition that a self-assessing tax is permitted in Pennsylvania, but that case is inapplicable here. The city's power to tax springs from authority given by the Commonwealth,

and the power must be strictly adhered to: Murray et ux. v. City of Philadelphia, 364 Pa. 157 (1950). The Act of 1933 prescribes a detailed system of assessment preliminary to the valid levy of any tax. In view of this specific requirement the city cannot ignore the enabling statute and employ a different method of assessment. Such procedures of the Act of 1933 have not been followed and, in any event, we can find no power in either the Act of 1933 or the Act of 1864 as written by the legislature and construed by the courts that would permit the city to levy the tax.* Its source, if any, must be found in the Sterling Act, and what was said in Marson v. City of Philadelphia et al., 342 Pa. 369 (1941), with reference to the wage tax, is true in all respects as to the mercantile tax:

"The only power that Philadelphia has to impose any tax on its residents is the power the State gives it in the 'Sterling Act'. Repeal this Act and the power vanishes and the tax falls."

Finding as we do that the Sterling Act is in effect, we further adhere to the principles set forth in Murray et ux. v. City of Philadelphia, supra, and hold

---

* In Bangor's Appeal, 109 Pa. 79, Mr. Justice Paxson, construing the language of the statute there involved (virtually identical with the Acts of 1864 and 1844, now contained in the Act of 1933), held that what was permitted was the fixing of a flat value for different classes of occupation and the collection from each person so engaged of a uniform tax upon this flat value. As was stated there:

". . . thus in levying a tax upon 'occupations,' a tax of $100 upon every person having a known occupation would be uniform. But what uniformity is there in laying an 'occupation' tax of $100 upon A. and a like levy of $200 upon B., the occupation of each being similar? . . . This brings us at once to a vice underlying the whole case. Under the guise of an 'occupation' tax, the City of Williamsport has levied, and is seeking to collect, an income tax. . . . The power to levy an occupation tax gave the City no right to levy an income tax."

that the Murray case and our decision in the Philadelphia Saving Fund Society case, supra, govern in all respects. Accordingly, plaintiff corporations in this suit—namely, the Insurance Company of North America, the Fire Association of Philadelphia, the National Union Fire Insurance Company and their subsidiaries, representing all the capital stock insurance companies in Philadelphia, the Bell Telephone Company, and the corporate trucking companies—do not come within the taxing provisions of the ordinance, inasmuch as they pay substantial corporate taxes to the Commonwealth. Furthermore, there are other taxes and fees paid by both the corporate and noncorporate plaintiffs involved. An examination of the various imposts paid by the insurance companies to the Insurance Department and by the utilities to the Pennsylvania Utility Commission and to the Commonwealth, has led us to the conclusion that the city cannot levy a mercantile license tax upon these plaintiffs, since some of the sums paid by them to the States and its agencies are real license fees within the meaning of the Sterling Act and other payments are State taxes that are duplicated by the city's gross receipts levy.

I. Taxation of the capital stock and mutual life insurance companies doing business in Philadelphia is expressly mandated in section 1 *(h)* (3) of the Ordinance, which states:

"For the purpose of determining the gross volume of business from the business of insurance, such receipts shall mean those from premiums received from risks within the City of Philadelphia, whether by mutual or stock companies, domestic or foreign, without any deductions therefrom for any cost or expense whatsoever."

Furthermore, regulation 318 *(b)* provides that:

"Reinsurance assumed shall not be included in the tax base; reinsurance ceded is not deductible from gross receipts."

And it is further stated in section *(d)* that:

"Receipts from servicing mortgages, operating hotels, etc., are to be included in the tax base."

The regulation conflicts with the ordinance in that gross receipts under the regulation include elements of income other than premiums. Without deciding whether this regulation amounts to administrative legislation and hence has the same defect discussed in Lefferts et al. v. City of Philadelphia, 88 D. & C. 345 (1953), it is sufficient to say that even if the tax base of the insurance companies is limited to that expressly contained in the ordinance, that enactment imposes a three-mill tax on precisely the same subjects that are taxed by the Commonwealth under the Gross Premium Tax Act of December 27, 1951, P. L. 1799, and the Marine Insurance Underwriting Profits Tax Act of May 13, 1927, P. L. 988.

The Gross Premium Tax Act of December 27, 1951, P. L. 1799, provides that every domestic insurance company shall report annually:

"The entire amount of premiums, premium deposits or assessments received by such company, association or exchange during the year ending with the 31st day of December preceding . . . and shall pay a tax of two percentum upon the gross amount of said premiums, premium deposits and assessments received from business transacted within this Commonwealth."

And further that:

"Such company, association or exchange, in reporting for taxation, may deduct from the gross premiums, premium deposits and assessments, all amounts returned on policies cancelled or not taken and all premiums received for re-insurance . . ."

The Marine Insurance Underwriting Profit Tax Act, supra, levies a five percent tax on the proportion of the total underwriting profit of an insurer from marine insurance which the gross premiums within

the Commonwealth bear to the gross premiums for such marine insurance within the United States.

An examination of the provisions of these two tax acts evidences that the State has taxed all sources of income from gross premiums of both mutual and stock companies doing business in Pennsylvania, and has even employed language in this legislation similar to the wording of the Mercantile Tax Ordinance. The city, in effect, has reiterated the contentions presented in Philadelphia Saving Fund Society et al. v. City of Philadelphia, supra, and has argued that the gross premiums tax is a property tax, whereas the city's tax is not a tax on gross premiums but one exacted for the privilege of doing business in Philadelphia that is only measured by gross receipts. This casuistic reasoning was unconvincing in that case, and we reject it here. No clearer example of double taxation of the same subject can be found than this attempted impost upon gross premiums already subject to the Commonwealth's levy. The gravamen of the city's argument seems to be that the impost is valid because it has been called a mercantile license tax whereas the State has termed its levy a gross premium tax. Had we not authority of Murray et ux. v. City of Philadelphia, supra, we would yet look through such diaphanous film to the substance of the respective enactments. The Murray decision makes it clear that it was just such a situation which the Sterling Act was intended to avoid. Gross premiums upon which the company pays a two percent tax to the Commonwealth would also be subject to an additional three mills levy by the city. As the court further stated in the Murray case:

"In determining whether double taxation results . . . , the practical operation of the two taxes is controlling as against mere terminology from time to time employed in describing taxes in various cases."

Contentions with respect to other payments and the effect of the Act of May 3, 1915, P. L. 217, have been raised by the companies, but our holding makes it unnecessary to rule on these issues.

II. The Bell Telephone Company is a public utility as defined by the Public Utility Law of May 28, 1937, P. L. 1053, and its amendments, and a common carrier as defined by the Federal Communications Act of June 19, 1934, 48 Stat. at L. 1065, and its amendments: 47 U. S. C. §153(h). As a corporation, the company pays corporate net income tax and capital stock taxes to the State, payments for which in 1953 amounted to upward of $3,000,000. In addition, the Act of June 1, 1889, P. L. 420, last amended by the Act of May 29, 1951, P. L. 468, taxes gross receipts from telegraph and telephone messages transmitted wholly within the State which amounted to $2,500,000 in 1953. The city has cited Commonwealth v. Harrisburg Light & Power Company, 284 Pa. 175 (1926), for the proposition that the State tax is a revenue measure, whereas the mercantile tax is a privilege tax, and thus no double taxation results. Though there is language in the opinion to that effect, the ruling by an unanimous court in Murray et ux. v. City of Philadelphia is controlling and our ruling must of necessity be in accord. In addition, however, that case involved the State mercantile tax, and the court was very careful to point out that even if this is double taxation, the legislative intent to impose the double tax is found in the statute imposing the State mercantile tax. This is entirely consistent with the decision in the Murray case, for there the court expressly held, as have other cases construing the Sterling Act, that one clear purpose of that statute was to prevent double taxation, and although multiple taxation is permitted when expressly provided for, it is not allowed when the legislature intends otherwise.

In addition to the levies discussed, plaintiff is subject to and pays fees to the commission to defray the cost of regulation. The sum is exacted under the authority of section 1201 of the Public Utility Law, supra, and amounted to $126,000 in 1953.

Section 1201 is entitled "Assessment of Regulatory Expenses Upon Public Utilities", and establishes detailed assessment procedures. Disregarding reimbursements for examinations, the comprehensive system of charges in the act establishes that these charges constitute a real license fee within the meaning of that term as used in Armour and Company v. Pittsburgh, et al., 363 Pa. 109 (1949). This is readily discernible from the clear language of the pertinent section of the Act which states:

"Section 1201: . . . (b) Periodically, the commission shall determine the aggregate of its expenditures, less (1) amounts assessable under paragraph (a) hereof; (2) expenditures for equipment, furniture, and machinery; (3) the estimated cost of regulating municipal corporations furnishing public service; and (4) the estimated cost of regulating contract carriers by motor vehicle. The remaining balance shall be so allocated to the groups of public utilities furnishing the various types of service that each group shall have allocated to it—(1) an amount equal to the expenditures of the commission directly attributable to the regulation of that group; (2) an amount equal to such proportion of the expenditures of the commission not directly attributable to any group, as the gross intrastate operating revenues of the group bear to the total gross intrastate operating revenues of all public utilities . . ."

"(f) It is the intent and purpose of this section that the several groups of persons and corporations subject to this act shall each contribute, by way of assessments, sufficient funds to the Commonwealth

to reimburse the Commonwealth for the reasonable cost of regulating the respective groups."

From this it appears that there is no validity in the argument that the sum of $126,000 paid by the company is a "mere registration fee". Both the purpose of the act and the exaction make it apparent that this payment is a real license fee that exempts the company from local taxation.

III. The question raised by the trucking companies which have brought the class action and the complaint on behalf of all independent taxicab owners in Philadelphia arise out of the same statutes and thus will be construed together.

Initially, we should state that the suit of Davidson Transfer and Storage Company, which is engaged in the transportation of property as a common carrier in interstate commerce exclusively, and those of all other companies wholly engaged in interstate commerce need not be adjudicated at this time. The city solicitor has followed the ruling of Spector Motor Service, Inc., v. O'Connor, Tax Commissioner, 340 U.S. 602 (1951), in an opinion issued March 11, 1953, in which the city exempted companies engaged exclusively in interstate commerce. Therefore, no justifiable controversy is before us on this issue and any opinion we would give would be only advisory. It will be time enough to test the question should the city reverse its position in the future.

The remaining members of the class are either engaged partly or solely in intrastate commerce in Pennsylvania. Corporate plaintiffs, of course, are governed by our ruling in Philadelphia Saving Fund Society v. City of Philadelphia, supra. Moreover, both corporate and noncorporate plaintiffs pay sums to the State and to the Public Utility Commission that entitle them to exemption from the provisions of the city's ordinance,

quite apart·from consideration of the corporate taxes that are paid.

Under the provisions of the Act of June 22, 1931, P. L. 694, as last amended by the Act of December 27, 1951, P. L. 1761, et seq., all common and contract carriers, whether engaged in inter or intrastate commerce, must pay to the Commonwealth the tax of eight mills on gross receipts for the use of the highways. The Act of June 22, 1931, P. L. 694, specifically declared in its title that it is "An Act imposing a tax on gross receipts as an excise on the use of the public highways by certain owners or operators of motor vehicles transporting passengers and property for hire".

The constitutionality of the act has been upheld in Shirks Motor Express v. Messner, 375 Pa. 450, where the court held that the tax is one for the privilege of using the Commonwealth's highways in the business of transportation and hire.

Clearly, the gross receipts tax is duplicated by the levy provided for in the controverted ordinance and, indeed, the great stress laid on the distinction between excise and property taxes would seem to estop the city from attempting to levy its "excise" tax upon these truckers who pay not only a gross receipts tax to the State, but one that has been termed excise as well. Terminology aside, however, this is double taxation forbidden by the Sterling Act and, although the city cites by way of analogy the Harrisburg Light and Power Company case, supra, what we have said about the application of that case to the Bell Telephone Company is apropos here. Whether the State can impose double taxation is not the question. It is quite clear that the Sterling Act prohibits the city from duplicating State imposts, and that the city's levy on gross income, which is already subject to a State use tax, is invalid.

Additionally, the carriers must pay fees to the Public Utility Commission which are prorated and assessed

in exactly the same manner and under the same provisions of the Public Utility Law that are applicable to the Bell Telephone Company. Similar taxes, charges and modes of charging are imposed upon the taxicab drivers, and in their case, too, the provisions of the Public Utility Law that have been discussed completely govern the conduct of their business.

Accordingly, we hold that the insurance companies, common and contract carriers, carrying property for hire, and the class of independent taxicab owners are not subject to the mercantile tax inasmuch as the respective State taxes and fees paid by these groups are within the limitations on the city's power to tax imposed by the Sterling Act.

It is, of course, regrettable that we must make these decisions adjudging the tax ordinance invalid as to plaintiffs here involved when the City of Philadelphia appears to be in need of funds for various civic endeavors. We are mindful of the effect of our rulings, but we believe that the contradictions and confusion which existed in tax cases prior to the Murray decision as a result of judicial determination that was based more upon expediency than upon sound principles should be avoided in this instance.

It must also be borne in mind that State sources of revenue must be protected, and that the unequivocal mandate of the Sterling Act and the Murray case, supra, is that the city cannot compete with the Commonwealth for tax funds. We have relied upon the Murray decision because the principles enunciated therein have plotted a clear and logical course in the field of taxation. This conclusion is reinforced by contemplation of the Philadelphia ordinance, which fairly discloses the traps in which legislatures and courts alike can become ensnared if they fail to look through form to substance. The late Mr. Justice Linn said in the Murray case that taxation is not a matter of logic;

it is likewise not a matter of magic. By invoking a phrase or a title in an ordinance, that which is invalid and unsound cannot be made acceptable because it is expedient at the moment.

In Philadelphia Saving Fund Society, supra, we briefly analyzed typical mercantile tax ordinances of 11 cities of the Commonwealth, including the City of Pittsburgh. Comparing all of these severally with the Philadelphia ordinance leaves no doubt that the latter is fundamentally different and does not create a genuine mercantile tax as the others do but actually creates a gross income tax on every professional and commercial activity, enterprise and venture in the City of Philadelphia.

The history of the mercantile license tax begins with the passage of the Act of May 2, 1821, P. L. 244. Various changes in procedures and subjects of taxation occur in later legislation, and this type statute reached its most comprehensive form with the passage of the Act of May 2, 1899, P. L. 184. All of the enactments, however, follow a consistent pattern. The nature of a mercantile tax levy was characterized fully in the leading case of Commonwealth v. Lutz, 284 Pa. 184 (1925), where the court stated in construing the Act of 1899, supra:

". . . the [act] . . . make[s] subject to the tax 'each retail vendor of or retail dealer in goods, wares and merchandise', without exemption of any kind."

Thus, the impact of the legislation is upon dealers and vendors. Norris Brothers v. Commonwealth, 27 Pa. 494 (1856), is authority for this legal definition:

"A dealer in the popular, and therefore in the statutory sense of the word, is not one who buys to keep, or makes to sell, but one who buys to sell again."

This definition has been followed through the decisions and was reaffirmed in the Lutz case, supra. In that case the court specifically held that the language

used in the Act of 1899 must be assumed to have been used in the sense in which it had been traditionally interpreted by the courts of last resort in construing all of the earlier legislation. See Commonwealth v. Thomas Potters Sons & Co., 159 Pa. 583; Commonwealth v. Bailey, Banks & Biddle, 29 Pa. 210; The Commonwealth of Pennsylvania v. Gormley, 173 Pa. 586.

Thus, not only the historical background but also the Pennsylvania cases adjudicating the various mercantile tax statutes stand for the proposition that a genuine mercantile tax is one limited to merchants, tradesmen and vendors and those dealing in mercantile services, such as restaurateurs.

When the Philadelphia ordinance is examined against this background of a century of legislation and decisions it becomes evident that the act involved, whatever else it may be—is not a genuine mercantile levy. Hence, the city's reliance upon the Federal Drug Company v. Pittsburgh et al., 358 Pa. 454 (1948), and the other decisions construing true mercantile tax statutes, is patent error. In those cases subjects, modes and procedures of taxation were involved that in breadth and scope fell far short of what is embraced in the Philadelphia ordinance and the regulations thereunder. This factor cannot be overemphasized for the true import and effect of the ordinance can be realized only when viewed in this light.

The Murray case was concerned with the attempted imposition of a *general net income tax* by Philadelphia. In striking down such a tax the court established a guidepost of sound decision that should not have left any municipality in doubt. Despite this, Philadelphia has gone much further and has, in effect, levied a general gross income tax upon all activities that are carried on within its borders.

It is clear that the ordinances enacted in other cities of the Commonwealth are real mercantile levies that

follow the traditional pattern of tax statutes which have been construed and approved by our courts. The study we have made of many of these tax statutes points up the fact that the system of local and State taxation existing in the Commonwealth is the product of a different era and that the structure now demands complete, scientific study and review by executive and legislative branches of the State Government and resultant legislation to remedy these inadequacies and faults. There is a pressing need for legislation that will create a new division of areas of taxation between municipalities and the State, otherwise the municipalities of the Commonwealth which are at the extreme end of the tax income line and have to rely on what is left to them by the Federal and State Governments will be compelled to continually *improvise* tax legislation with its resulting inadequacies and confusion. The remedy, however, lies with the legislature and not with the courts which in this instant case are being required in effect to legislate not only the tax mandates but the regulations to administer them. Such judicial attempts at legislation are completely unsatisfactory for they can only result in a patchwork of inconsistencies that solve no long-range problems but merely compound confusion.

In accord with the view expressed herein the following order is entered:

It is adjudged, ordered and decreed:

1. That those provisions of the Mercantile License Tax Ordinance adopted December 9, 1952, and the regulations thereunder that impose a tax upon the insurance companies and public utilities which have brought these actions are and are hereby adjudged to be invalid.

2. That the City of Philadelphia is perpetually enjoined from enforcing or attempting to enforce any and all provisions of the ordinance against Davidson

Transfer and Storage Company, Pinto Trucking Service, Inc., Rodgers Motor Lines, Inc., Contract Carrier Lines, Inc., the Bell Telephone Company of Pennsylvania, Insurance Company of North America, Indemnity Insurance Company of North America, Philadelphia Fire and Marine Insurance Company, Fire Association of Philadelphia, Reliance Insurance Company of Philadelphia, National Union Fire Insurance Company, National Union Indemnity Company, Birmingham Fire Insurance Company of Pennsylvania, the Penn Mutual Life Insurance Company, Provident Mutual Life Insurance Company of Philadelphia, the Fidelity Mutual Life Insurance Company, William Bonaccorsi, Jack Barbash, Joseph Murphy and Bernard Sklarow, individually and on behalf of all other independent taxicab owners in the City of Philadelphia, and all classes represented by plaintiffs in whose name these suits have been brought.

3. Defendant is to pay the costs.