Crosson et al., Appellants, *v.* Downingtown
Area School District.

Argued April 29, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

reargument refused November 16, 1970.

*A. Bruce Niccolo,* with him *Arthur A. Moorshead,* and *Moorshead & Niccolo,* for appellants.

*Theodore O. Rogers,* with him *Susan P. Windle,* and *Rogers, Gentry, Windle & Lamb,* for appellees.

OPINION BY MR. JUSTICE JONES, October 9, 1970:

Appellants (taxpayers), in three separate actions in equity in the Court of Common Pleas of Chester County, sought to enjoin appellees (a third-class school district and its tax collectors) from collecting occupation taxes. The Board of Assessment and Revision of Taxes

of Chester County had previously adopted a revised occupational classification and assessment schedule on May 1, 1967.[1]   In preparation of its budget for the fiscal year beginning July 1, 1968, the school district used the assessment rolls received from the Chief Assessor of Chester County.   A tentative school budget was ap-

---

[1] That schedule is as follows:

"PROFESSIONAL                                                    $600.00

Definition: Classification requires scholarship and learning; it connotes the idea and ideal of serving others, even though its primary aim is the earning of a livelihood.

Examples: Doctors, lawyers, graduate engineers, president or vice president of an industrial or commercial firm, undertaker, CPA.

MANAGERIAL                                                      $400.00

Definition: Those engaged in conducting or controlling; administration; skillful direction.

Examples: Manager of an enterprise (store, contracting business, garage), sales manager, broker, accountant executive, engineer, merchant.

SKILLED LABOR                                                   $300.00

Definition: Those skillful in an art or craft, or having technical training of a specialized type.  Knowledge of an art or science combined with its technique.

Example: Brick or stonemason, carpenter, machinist, plumber, electrician, auto mechanic, chefs, bakers, teachers, secretarial, accountant.

LABORERS                                                        $200.00

Definition: Those wage-earning workers who do physical work as distinguished from those who are doing mental work.

Examples: General unskilled laborers, waitresses, helpers in the trades, handymen, road workers, maid, clerk, farmer.

UNEMPLOYED                                                         None

Retired, housewife, disabled, unemployed."

proved on May 7, 1968, and finally adopted on May 28, 1968. On June 25, 1968, the school district (acting under authority of The Local Tax Enabling Act, Act of December 31, 1965, P. L. 1257, §1 *et seq.*, 53 P.S. §6901 *et seq.* (Supp. 1970)), levied a 500 mill tax on occupations, as assessed by the County.[2] Appellants received their tax bills in the fall of 1968.

Both the tax resolution of the school district as well as the occupational assessments made by the county assessing authorities upon which the tax was levied were attacked by appellants below. As regards the assessments, appellants contended that the tax was invalid because: (1) the assessments were made by the local tax assessors of the various municipalities included within the school district and not by the Chief Assessor of Chester County as required by section 602 of The Fourth to Eighth Class Assessment Law (Act of May 21, 1943, P. L. 571, art. VI, §602, as amended, 72 P.S. §5453.602); and (2) it was not levied on the "Last adjusted valuation" of assessments as required by the Public School Code (Act of March 10, 1949, P. L. 30, §677, 24 P.S. §6-677). As regards the direct challenge to the tax itself, appellants argued: (1) the tax violates the Uniformity Clause of the Pennsylvania Constitution, Article VIII, §1, in that minors are exempt;

---

2 "SECTION ONE: Pursuant to the authority contained in the Local Tax Enabling Act, Act No. 511 of the 1965 Session of the Pennsylvania General Assembly, approved December 31, 1965, a tax for the purpose of providing revenue for general school purposes is hereby levied, assessed and imposed on the occupations of all persons physically residing within said School District, at any time during the fiscal year beginning on the first Monday of July, 1968, and ending on the first Monday of July, 1969, and being of the age of twenty-one (21) years or older, at the rate of Fifty per cent (50%), which is Five hundred mills per dollar, or $50 per $100 of the occupational assessment of said taxables as determined by the Chester County Occupational Assessment list for said School District."

(2) the tax is a disguised income tax and as such violates certain state statutes; and (3) the tax was not assessed and levied within the time provided by statute.

The chancellor, by an adjudication dated May 21, 1969, entered decrees nisi dismissing the complaints. Exceptions to these decrees were dismissed by the court en banc and a final decree entered. These appeals followed.

As to those issues advanced concerning the allegedly improper assessment procedures, the primary issue is one of jurisdiction: whether a court of equity, having jurisdiction and competency to determine the validity of a taxing resolution due to a constitutional challenge, should inquire into the validity of the assessment upon which the resolution was based when there are statutory procedures available to test the allegedly invalid assessment? This Court had occasion to consider this subject in *Lynch v. Owen J. Roberts Sch. Dist.*, 430 Pa. 461, 465-66, 244 A. 2d 1 (1968), wherein we approved the following language in our case law: " 'The teaching of our case law is that, where the controversy involves a challenge to the constitutional validity of a taxing statute or ordinance, such a controversy falls within the general class of cases wherein equity does have jurisdiction and competency to act. [Citations omitted.]' Studio Theaters, Inc. v. Washington, 418 Pa. 73, 79, 209 A. 2d 802, 805 (1965). See also, Philadelphia Life Ins. Co. v. Commonwealth, 410 Pa. 571, 190 A. 2d 111 (1963) ; Young Men's Christian Assoc. v. Reading, 402 Pa. 592, 167 A. 2d 469 (1961) (dictum) ; cf. Blue Cross Appeal, 416 Pa. 574, 209 A. 2d 799 (1965). Moreover, that this rule applies even in cases where there is a *specific* statutory remedy at law is shown clearly by Studio Theaters. . . . Finally, we note that the equity court, having once obtained jurisdiction because of the presence of a constitutional challenge to a taxing stat-

ute, may also dispose, as did the lower court here, of non-constitutional challenges as well." In *Lynch*, we found an occupation tax to be invalid as it permitted the school district tax director, rather than the chief county assessor, to value for tax purposes the occupations themselves. There is no such problem involved in the case at bar. In addition, we recently stated: "what is required to confer jurisdiction on an equity court is the existence of a substantial question of constitutionality (and not a mere allegation) and the absence of an adequate statutory remedy." *Rochester & Pittsburgh Coal Co. v. Indiana County Board of Assessment and Revision of Taxes*, 438 Pa. 506, 508, 266 A. 2d 78 (1970). While *Lynch* demonstrates that a court of equity will determine nonconstitutional challenges to a tax resolution even though the constitutional challenge affording jurisdiction and competency is not considered, it does not necessarily follow that equity will consider *every* nonconstitutional challenge that is collateral to the taxing resolution.

Appellants assert the failure by the county assessing authorities to follow certain procedures as a basis for invalidating the occupation tax. *Mauch Chunk Township Taxpayers' Association v. Kern*, 339 Pa. 257, 14 A. 2d 329 (1940), involved a bill in equity filed by a taxpayers' association directly against the County Board of Revision seeking a preliminary injunction due to the Board's setting aside the assessor's valuation. This Court stated: "As plaintiffs do not deny the power of the Board to revise and equalize the triennial assessment of their properties, but complain merely of irregularities in its exercise of that power, their bill afforded no jurisdiction for the intervention of a court of equity." 339 Pa. at 259, 14 A. 2d at 330. In *Narehood v. Pearson*, 374 Pa. 299, 306, 96 A. 2d 895 (1953), taxpayers filed a bill in equity to enjoin directly the

county commissioners and the county board of assessment "from proceeding on the assessments" which they averred were illegally and unconstitutionally made, or "levying any millage or collecting any taxes thereon." In regard to the taxpayers' contention that equity should take jurisdiction, it was pointed out: "Where there is an adequate remedy at law in this class of case, this Court has repeatedly said that *Equity should intervene only where there is either want of a power to make the assessment or to levy a tax, or the tax is levied without authority of law, or where there is an* utter disregard of imperative constitutional requirements: [citations of authorities]." There are no substantial contentions concerning the constitutionality of the assessment[3] or that the Chief County Assessor lacked the power to make an assessment; it is only the irregular exercise of that power which is questioned.

In addition, the legislature has provided an adequate remedy in the form of an appeal from the assessment to the Board of Assessment and Revision of Taxes; the taxpayer can further appeal from the order of the board to the court of common pleas of the county.[4] For these

---

[3] Appellants' collateral argument that there was an unconstitutional delegation of legislative authority to the Chief Assessor resulting in complete discretion in that officer to value occupations was left open in *Lynch*. In *Chartiers Valley Joint Schools v. County Board of School Directors*, 418 Pa. 520, 529, 211 A. 2d 487 (1965), it was stated: "It is generally agreed that the nondelegation principle does not require that all details of administration be precisely or separately enumerated in the statute." Accordingly, we find this contention to be without merit. As such, it would not be a "substantial" constitutional question to afford equity jurisdiction within the meaning of *Rochester & Pittsburgh Coal Co. v. Indiana County Board of Assessment and Revision of Taxes*, 438 Pa. 506, 266 A. 2d 78 (1970).

[4] The Fourth to Eighth Class County Assessment Law, Act of May 21, 1943, P. L. 571, art. VII, §§701-704, as amended, 72 P.S. §§5453.701-5453.704.

reasons a court of equity should not countenance a direct attack upon the county assessments. We see no logic in allowing the presence of a constitutional challenge to the tax resolution to justify a collateral, nonconstitutional attack in equity on the assessment. Besides the illogical result that would otherwise occur, there are two very practical reasons for this view. As noted by the chancellor below, "had this [statutory] avenue of attack been pursued by [the taxpayers], the Chief Assessor and the Board of Assessment and Revision of Taxes would have been afforded the opportunity of defending the actions they had taken and approved." The opinion of the court en banc also added, "To now permit [taxpayers] to attack the assessments in question in an action against the school district and its tax collectors is to require [the school district] to defend the actions of another governmental agency over which they have no supervision or control."

Turning now to those issues properly before this Court concerning the tax resolution itself, appellants first contend that this occupation tax is a disguised income tax exceeding one per cent of their income, in violation of state law.[5] "Occupation taxes are not new. This Court has long recognized the distinction between occupation and income taxes: 'An "occupation" tax is peculiar in its character. It is not a tax upon property, but upon the pursuit which a man follows in order to acquire property and support his family. It is a tax upon income in the sense only that every other tax is a tax upon income; that is to say, it reduces a man's clear income by the precise amount of the tax. But it is an income tax in no sense.' Banger's Appeal, 109 Pa. 79, 95 (1885). Phillips v. Barnhart, 27 Pa. Superior Ct. 26 (1904)."; *Crawford v. Southern Fulton*

---

[5] Act of December 27, 1967, P. L. 894, §1, 53 P.S. §6908 (Supp. 1970).

*School District,* 431 Pa. 324, 333-34, 246 A. 2d 332, 336 (1968). In *Banger's Appeal,* 109 Pa. 79 (1885), the occupation tax was found to be an income tax since the amount of the tax varied with the amount of income earned by different taxpayers engaged in the same occupation. While appellants contend this factor to be present, the record is barren of any direct correlation. As was stated by one lower court concerning the valuation of an occupation, "economic return is not the sole measure of the value of an occupation. . . . It is apparent that other factors than income affect the value which may be attributed to an occupation. These may include social status, historical attributes, type, kind and quantity of work required, degree of education and training demanded, and many other such real or fancied social and economic distinctions. . . ." *Miller v. York Imperial School District,* 23 Pa. D. & C. 2d 406, 417 (York C. P. 1960). In the absence of any showing that the instant tax was based solely on taxpayers' income, this contention is without merit.

Further, appellants argue that the tax is invalid since it was not assessed by the board of school directors within the time provided by statute. The Public School Code of 1949 provides: "In all school districts of the second, third, and fourth class, all school taxes shall be levied and assessed by the board of school directors therein, during the month of February or March or April or May or June each year, for the ensuing fiscal year."[6] Initially, we note that the school district's authority for this tax was The Local Tax Enabling Act, *supra,* and not the Public School Code of 1949.[7] However, the *time* within which the levy and assessment must be made is controlled by the above-quoted provi-

---

[6] Act of March 10, 1949, P. L. 30, art. VI, §672a, 24 P.S. §6-672.

[7] Act of March 10, 1949, P. L. 30, art. VI, §677, 24 P.S. §6-677.

sion.[8]  Our decision in *Lynch v. Owen J. Roberts School Dist.*, 430 Pa. 461, 244 A. 2d 1 (1968), centered on a semantic discussion of whether the word, "assess", within the language of the Tax Anything Act of 1947 (The statutory predecessor of The Local Tax Enabling Act) and The Local Tax Enabling Act, referred to the valuation of the occupation itself or the computation of the actual tax owed based on the valuation.  We concluded "assess" covered the former, so that the school district's only assessing power was to compute the tax.  Thus, "assess", within the meaning of section 672 of the Public School Code, read in conjunction with The Local Tax Enabling Act, refers simply to this ministerial computation.  Our problem then revolves around the date when this act took place.

There is no doubt that the resolution constituting the levy was made on June 26, 1968, and, hence, within the applicable time limitation.  However, there is doubt whether the computation was completed during June, 1968.  Whether the date is operative depends on whether the statute is mandatory or directory.  Early opinions of this Court held that similar provisions of prior school codes, since repealed, relating to the time of levy were directory.[9]  *Gearhart v. Dixon*, 1 Pa. 224 (1845) ;[10]

---

[8] Act of December 31, 1965, P. L. 1257, §5, as amended, October 9, 1967, P. L. 361, §1, 53 P.S. §6905 (Supp. 1970).

[9] However, several common pleas courts have reached conflicting conclusions on more recent school code provisions.  *Compare, McKinley v. Southern Fulton School District*, 5 Adams L. J. 13 (1963) *and Bright v. City of Sharon*, 69 Pa. D. & C. 551 (Mercer C. P. 1949) *with Ryan Township School District Amusement Tax*, 7 Pa. D. & C. 2d 199 (Schuylkill C. P. 1955) *and Snyder Township School District*, 69 Pa. D. & C. 10 (Blair Q. S. 1949).

[10] Involved was the Act of June 13, 1836, P. L. 525, §4, (repealed 1911) : "The school directors of every school district . . . shall annually, on or before the first Monday of May, authorize to be levied such an amount of tax on said district as they may think necessary for school purposes."

*Walker v. Edmonds,* 197 Pa. 645, 47 A. 867 (1901).[11] Thus, if the levy, which chronologically precedes the computation, is merely directory, it follows that lack of timeliness in mathematically determining the amount of tax is not fatal. Moreover, we recently decided that such time provisions in a statute covering assessment in its "valuation" sense were directory and not mandatory. *Parker v. Krick,* 433 Pa. 514, 252 A. 2d 648 (1969). We are led to the conclusion that the time provisions of the statute here involved are also directory and not mandatory. Appellants' further arguments in this regard are similarly without merit.

Lastly, we turn to appellants' contention that the occupation tax is violative of the uniformity requirements of our Constitution, art. VIII, §1, in that minors are exempt from its operation. That provision requires that, "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax. . . ." At the outset, we note that this uniformity clause applies to occupation taxes. In *Saulsbury v. Bethlehem Steel Co.,* 413 Pa. 316, 196 A. 2d 664 (1964), we held an occupational privilege tax to be subject to this requirement; there is no reason to distinguish an occupation tax.

While there is no question that the rate of taxation is uniform, it is urged that the classification of the occupations of persons for tax purposes based on the age of twenty-one is unconstitutional.[12] "Classification is

---

[11] Act of May 8, 1854, P. L. 617, §§28, 30 and 33, as amended, Act of April 22, 1863, P. L. 523 (repealed 1911). These provisions are substantially similar to note 10, *supra.*

[12] Several lower courts have found there to be no violation. *Southern Fulton School District v. Hill,* 44 Pa. D. & C. 2d 12 (Fulton C. P. 1967); *Miller v. York Imperial School District,* 23 Pa. D. & C. 2d 406 (York C. P. 1960); *Francher v. Robeson Township School District,* 54 Berks 126 (1962). One court found there to be a violation. *Lynch v. Owen J. Roberts School Dist.,* 16 Chest. 63

a legislative determination and so long as there is a valid basis for the classification, it will be sustained. As was stated in Coe v. Duffield, 185 Pa. Superior Ct. 532, 535, 138 A. 2d 303 (1958) : 'In the legitimate exercise of the power of taxation, persons and things have been, and may constitutionally be, classified. The selection of the subjects for taxation, their classifications, and the method of collection are legislative matters. Durach's Appeal, 62 Pa. 491, 494 (1870) ; Commonwealth v. Del. Div. Canal Co., 123 Pa. 594, 620, 16 A. 584 (1889). Classification for the purpose of taxation may be based on the existence of differences recognized in the business world, on the want of adaptability of the subjects to the same method of taxation, upon the impracticability of applying to them the same methods so as to produce justice and reasonably uniform results, or upon well grounded considerations of public policy. Heisler v. Thomas Colliery Co., supra, 274 Pa. 448, 118 A. 394 (1922).' " *Jones & Laughlin Tax Assessment Case*, 405 Pa. 421, 433-34, 175 A. 2d 856 (1961). Our determination of the validity of the instant occupation tax thus turns upon the reasonableness of its classification.

Appellants strongly rely on *Saulsbury v. Bethlehem Steel Co.*, 413 Pa. 316, 196 A. 2d 664 (1964), as the basis for urging this tax classification be held unconstitutional. In that case, we found a $10 per annum occupational privilege tax on every individual engaged in an occupation within the corporate limits of the city, whose earnings would amount to $600 or more during the year, to violate the uniformity requirements. As age was not a factor, that case is readily distinguishable. Initially, it must be noted that the magic age of majority supports many distinctions outside the field

(1967). However, the instant chancellor in his adjudication below specifically refused to follow *Lynch* on this point.

of state taxation. There are several reasons for holding this tax classification to be similarly acceptable. While the revenues to be derived from taxing the occupations of minors would be relatively small, the difficulty of collecting the tax from minors who refuse to pay would be relatively great because, *inter alia*, they usually do not own property upon which a levy could be made. It should also be realistically noted that many minors only work during nonschool hours, and it would be unfair to tax them as if they have full-time occupations.[13] We ascertain no sound reason to find this tax classification to be unreasonable.

Decree affirmed. Appellants to pay costs.

Mr. Justice POMEROY concurs in the result.

Mr. Justice EAGEN dissents.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I dissent from today's decision insofar as it relates to equity jurisdiction and the uniformity clause of the Pennsylvania Constitution, Art. VIII, §1. It continues the distortion of this Court's opinion in *Lynch v. Owen J. Roberts Sch. Dist.*, 430 Pa. 461, 244 A. 2d 1 (1968), begun by *Rochester & Pittsburgh Coal Co. v. Indiana County Bd. of Assess.*, 438 Pa. 506, 266 A. 2d 78 (1970).

## I. Equity Jurisdiction

For unarticulated reasons Justice JONES' opinion in support of the judgment of the Court sees fit to further limit the jurisdiction of the courts of equity in this area. In *Lynch* we held that when a taxing stat-

---

[13] While it does not enter into our present holding, we note that one change engendered by our recent Constitutional Convention has been an amendment to the Uniformity Clause allowing the General Assembly and other taxing authorities to create exemptions based on age. Art. VIII, §2, b (ii).

ute or ordinance is made the subject of *constitutional* challenge, equity has the jurisdiction and the competency to consider both the constitutional and nonconstitutional challenges, even though there exists a specific statutory remedy. 430 Pa. at 465-66, 244 A. 2d at 3-4. This was not a new or revolutionary holding, springing full grown into the world, but rather was one based on a careful review of the prior case law. *Studio Theaters, Inc. v. Washington,* 418 Pa. 73, 209 A. 2d 802 (1965) ; *Plymouth Lanes, Inc. v. Plymouth Twp.,* 415 Pa. 206, 202 A. 2d 811 (1964) ; *Philadelphia Life Ins. Co. v. Commonwealth,* 410 Pa. 571, 190 A. 2d 111 (1963) ; *Young Men's Christian Assoc. v. Reading,* 402 Pa. 592, 167 A. 2d 469 (1961) ; cf. *Blue Cross Appeal,* 416 Pa. 574, 209 A. 2d 799 (1965).

I believe that this Court's holding in *Lynch* was based on sound policy objectives, which I, joined by the Chief Justice, attempted to clarify in our dissent in *Rochester,* supra at 514, 266 A. 2d 82. I see no reason, nor has Justice JONES' opinion suggested any, to confine petitioners affected by an inherently constitutionally defective tax to exclusively narrow statutory remedies. I also must confess that I am unable to perceive Justice JONES' recently created distinction between a "substantial constitutional question" as opposed to a "constitutional question." Is it suggested that there is some jurisprudential difference between the degree or extent of unconstitutionality, and that some unconstitutionality may be ignored, but not other? In any case, it is a distinction which invites confusion in its application.

Justice JONES' opinion in the instant case, however, goes much further in limiting *Lynch* and *Rochester,* for it today mandates that equity may not consider every nonconstitutional challenge that is collateral to a constitutional challenge. One of the most established and

respected principles of jurisprudence in Pennsylvania is that a court of equity will assume jurisdiction to prevent a multiplicity of suits, and once it has jurisdiction, it will dispose of *all* questions which arise affecting the parties. See *Baederwood Center, Inc. v. Putney*, 390 Pa. 53, 133 A. 2d 836 (1957) ; *Pennsylvania State Chamber of Commerce v. Torquato*, 386 Pa. 306, 125 A. 2d 755 (1956), cert. denied sub nom. *Bowman v. Pennsylvania State Chamber of Commerce*, 352 U.S. 1024, 77 S. Ct. 589 (1957) ; *Oil City Nat. Bank v. McCalmont*, 303 Pa. 306, 154 Atl. 497 (1931) ; *Appeal of Harper*, 109 Pa. 9, 1 Atl. 791 (1885). Yet Justice JONES would require that in some cases (it is not clear which ones) constitutional questions would be considered by equity, while nonconstitutional questions would be considered by the tax review board. I can see no reason for encouraging this increased litigation, nor is any reason offered.

## II. The Uniformity Clause

I also cannot accept Justice JONES' treatment of the uniformity clause, Art. VIII, §1, of the Pennsylvania Constitution. In a series of tax cases a few years ago, this Court settled beyond question that the uniformity clause applied to property taxes. See, e.g., *Deitch Co. v. Bd. of Property Assess.*, 417 Pa. 213, 209 A. 2d 397 (1965) ; *McKnight Shopping Center, Inc. v. Bd. of Property Assess.*, 417 Pa. 234, 209 A. 2d 389 (1965).

In an earlier decision, the Court extended and applied the uniformity clause to an occupational privilege tax. *Saulsbury v. Bethlehem Steel Co.*, 413 Pa. 316, 319-20, 196 A. 2d 664, 666 (1964). There, this Court stated: "While different subjects may be reasonably classified for tax purposes . . . there must be no lack of uniformity within the class, either on the given subject of the tax or the persons affected as payers. . . .

If a tax is levied on an occupational privilege, it must apply to all who share the privilege. Part of the class may not be excused, regardless of the motive behind the action." Id. at 319-20, 196 A. 2d at 666 (citations omitted). This Court there held that an occupation tax that excused those earning less than $600 per year violated the uniformity clause.

In light of *Saulsbury*, I fail to see how the majority can distinguish a class defined by age from a class defined by earnings. The majority relies on *Jones & Laughlin Tax Assessment Case*, 405 Pa. 421, 175 A. 2d 856 (1961). The only uniformity issue in *Jones* concerned the constitutionality of a classification by the Legislature separating machinery, tools, appliances, and other equipment from real estate in valuing a mill, mine, manufacturing or industrial establishment for tax purposes. This Court held that such a classification was valid, and reviewed other instances where classifications had been upheld, such as classifying life insurance companies into stock and mutual companies. Id. at 434-35, 175 A. 2d at 863. Such classifications in no way resemble the situation presented in the instant case.

As noted above, this Court stressed in *Saulsbury* that the tax must be uniform *within the occupational class*. If one cannot constitutionally subdivide a class by amount earned annually, one can hardly do it by age.

Justice JONES' opinion counters, and attempts to distinguish *Saulsbury*, by arguing that revenues to be derived from taxing occupations of minors would be small, and the difficulty of collection great. The same argument applies with equal weight to persons earning less than $600 per year and was rejected in 1964 in *Saulsbury*.

For these reasons, I must dissent.

Mr. Chief Justice BELL joins in this dissent.