## McDevitt v. Central Dauphin School District

*John D. Killian*, for plaintiff.
*Edward E. Knauss, III*, for defendants.
*Leonard Tinter*, for Dauphin County.

CALDWELL, *Chancellor*, March 14, 1975—This class action suit in equity is a companion case to No. 3341 Equity Docket, 1974.* Both proceedings seek to void an "occupation" tax imposed by defendant school district. This suit also attacks a provision contained in three tax resolutions, enacted by defendant school district, which imposes liability on a husband for occupation and per capita taxes levied against his wife. The husband's liability clause in the resolutions was adopted pursuant to the terms contained in the enabling legislation for the taxes.

Plaintiff is a resident of defendant school district and is subject to payment of the occupation tax. He resides with his wife, Margaret, who is a housewife and solely dependent upon plaintiff's income for support. Defendant, Central Dauphin School District, is a second-class school district in Dauphin County. Defendant Donato is an elected tax collec-

---

* See pp. 35-46 infra.

tor in Swatara Township and is the designated collection agent for all taxes levied by the school district upon residents of said township. Defendant Taylor is the Chief County Assessor of Dauphin County and defendant Board for the Assessment and Revision of Taxes of Dauphin County is organized and exists under the provisions of the Fourth to Eighth Class County Assessment Law of May 21, 1943, P.L. 571, as amended, 72 PS §§5453.101, et seq.

On June 19, 1974, defendant school district adopted three resolutions imposing the following taxes on all residents of the district 18 years of age and over:

"(1) An 'occupation' tax of 18 per centum (180 mills) on the value of all occupations as assessed by Dauphin County. [This tax was adopted pursuant to authority granted in section 2 of The Local Tax Enabling Act of December 31, 1965, P.L. 1257, 53 PS §6902.]

"(2) A per capita tax of $5.00. [This tax was adopted pursuant to authority granted in section 2 of The Local Tax Enabling Act, supra, 53 PS §6902.]

"(3) A per capita tax of $5.00. [This tax was adopted pursuant to authority granted in Article 6, section 679 of the School Code of March 10, 1949, P.L. 30, as amended, 24 PS §6-679.]"

Reference to section 2 of The Local Tax Enabling Act (53 PS §6902) will reveal that the act delegates to political subdivisions a broad range of subjects for local taxation, including "persons," "transactions," "occupations," "privileges," "subjects" and "personal property." Pursuant to this authority, defendant school district imposed one of the two mentioned "per capita" taxes of $5 on each "person,"

and the "occupation" tax of 18 percent (180 mills) on the value of all "occupations."

Before proceeding further, it must be emphasized that, in its occupation tax resolution, the school district imposed the tax at the rate of "18 per centum [180 mills] *on the value of all occupations, as assessed on the assessment rolls . . . of Dauphin County* . . . for tax purposes." It is important to note that subjects of local taxation, including occupations, are assessed or valued by Dauphin County under the provisions of the Fourth to Eighth Class County Assessment Law, of May 21, 1943, P.L. 571, as amended, 72 PS §§5453.101, et seq. At its meeting held April 6, 1960, the following resolution was adopted by the Dauphin County Commissioners:

"RESOLVED that the present occupation assessment of $250.00, to include all men and women over the age of 21 residing in Dauphin County, be continued for the year 1961 and thereafter until changed."

This resolution was subsequently amended to lower the taxable age to 18 but otherwise has never been altered.

As a result of all occupations being assessed at $250, each resident of the defendant district 18 years of age or over is billed $45 for the school district's "occupation" tax ($250 × 18 percent (or 180 mills) = $45).

Section 8 of The Local Tax Enabling Act (53 PS §6908) places important limitations on the taxes permitted under it. These restrictions are relied on by plaintiff in asserting that the "occupation" tax, as imposed by defendant school district, cannot pass statutory muster.

Section 8 provides, in part, as follows:

"No taxes levied under the provisions of this Act shall be levied by any political subdivisions on the following subjects exceeding the rates specified in this section:

"(1) Per capita, poll or other similar head taxes, ten dollars ($10).

"(7) Flat rate occupation taxes not using a millage or percentage as a basis, ten dollars ($10)."

The argument is made that the "occupation" tax, as imposed by defendant district, is essentially a "per capita" tax or a "flat rate" occupation tax. Plaintiff contends the tax is illegal because it exceeds the $10 limitation for such taxes as outlined under section 8 of the act.

After reviewing the arguments advanced by plaintiff and the decisions of the appellate court which bear on the question, we believe the school district's "occupation" tax qualifies as such and is not affected by the provisions of section 8 of The Local Tax Enabling Act.

In seeking to classify the school district's "occupation" tax as a "flat rate" occupation tax or a per capita tax, plaintiff relies primarily on two decisions of the Pennsylvania Supreme Court. The first of these is Danyluk v. Johnstown, 406 Pa. 427, 178 A. 2d 609 (1962). Danyluk was an equity action wherein non-residents who worked in Johnstown sought to void a $10 tax imposed on non-residents "engaged in any occupation" within the City of Johnstown. The lower court and the Supreme Court declared that the tax, despite its label, was a direct tax on persons, not occupations. It was held that the tax as enacted violated the uniformity provisions of the Pennsylvania Constitution and that per capita taxes can only be imposed on residents of a taxing district.

In dicta statements the court said (at p. 610):

"The tax bears none of the incidents of an occupation tax which is a *flat rate* levy measured by the assessed value of a man's occupation. Consequently, in a true occupation tax the amount of the levy varies with the assessed value of a particular mode of employment. Here, no distinctions among occupations are made, a fixed ten dollar levy falling upon all non-residents. The use of the word 'occupation' adds nothing to the levy and does not conceal its real nature as a capitation tax." (Emphasis added.)

Although the court observed that the amount of an occupation tax varies with the assessed value of employment, it is clear the court was speaking of those cases where occupations are classified and assigned different valuations. Examples of this method of taxing occupations can be seen in Crosson v. Downingtown Area School District, 440 Pa. 468, 270 A. 2d 377 (1970), and Golden v. Andrews, 89 Dauph. 254 (1968).

However, we do not interpret the decision in Danyluk, supra, or The Local Tax Enabling Law, as *requiring* that occupations be classified and separately assessed and we find no prohibition against assessing all occupations at the same value. If the legislative intent was to require classification and differing values on occupations, such could easily have been mandated in the law. The school district did all that was contemplated or required of it when it established the rate to be applied in taxing occupations (18 percent of assessed value). It did not attempt to tax occupations at a flat rate, nor did it merely impose a per capita type tax (i.e., $45 per occupation or per person). Section 8(7) imposes a $10 limit on "flat rate occupation taxes *not using a millage or percentage as a basis.*" We are not prepared to hold that this language precludes a uni-

form tax where a percentage and a millage are employed to arrive at the occupation tax. The district itself is precluded from classifying and valuing occupations (see Lynch v. Owen J. Roberts School District, 430 Pa. 461, 244 A. 2d 1 (1968)) and there is nothing in the law that requires the county to do so. We recognize that under such circumstances the occupation tax in a taxing district will be the same for all taxables but we do not find this to be in violation of law. An "occupation" tax has been described as a tax upon the "pursuit which a man follows" but no statute or decision has been found that requires these "pursuits" to be assessed or taxed differently.

In Gaugler v. Allentown, 410 Pa. 315, 189 A. 2d 264 (1963), the lower court ruled that an occupation *privilege* tax of $10 could not be imposed on non-residents, because it was, in reality, a capitation or poll tax and hence illegal as to non-residents. The Supreme Court reversed and declared that while per capita taxes are taxes of a fixed amount on all persons within the jurisdiction of the taxing power, "this is a general rule and does not mean that every Occupation Privilege Tax to be valid must impose a tax which varies with the particular mode of employment." The court clarified its holding in Danyluk, supra, and said, "we did not intend to rule that an occupation tax in order to be valid must of necessity vary according to the value of the mode of employment." In Danyluk, supra, it had been admitted that the tax imposed was *intended* to be a per capita tax on residents and non-residents, and the tax had none of the incidents *that generally* are found in a true occupation tax. In Gaugler, supra (at p. 267), the court said "the language (of the resolution) must be read in view of the admitted facts in the case."

In the case before us, the facts are that the school district exercised its per capita tax privileges by enacting the two $5 per capita taxes allowed by law. Certainly the occupation tax resolution was not *intended* as a flat rate or per capita tax and it bears no resemblance to either, for it imposes a tax not in a fixed amount but at a percentage rate on the assessed value of occupations. Defendant school district has no authority or election as to how assessed values should be arrived at or whether they should be uniform or classified, so the school district cannot be said to have decided upon a uniform rate of taxation. This fact resulted because of the uniform assessment policy of the county and, as stated, we do not think a uniform assessment of occupations is invalid. In Banger's Appeal, 109 Pa. 79 (1885), the court held that a uniform assessment was permissible under a similar taxing law at 94-95:

"A tax of $100 on all occupations would be uniform. We are at once confronted with the objection that it would be unjust to tax the occupation of a laborer the same amount as a merchant, a physician, or a lawyer. . . . The objection is one that appeals more to the legislative than to the judicial department of the government."

Plaintiff's case is built on a theory that the legislature intended that occupation taxes be based on a graduated scale of occupational classifications. If this were the case, it is obvious that all occupation taxes in Dauphin County would be invalid because of the uniform occupation assessment. We fail to find any real evidence that this was what the legislature intended, although it would have been a simple matter to provide for directly.

As a general rule, where taxing statutes are in-

volved, any doubts as to meaning must be resolved in favor of the taxpayer. See Paper Products Co. v. Pittsburgh, 391 Pa. 87, 137 A. 2d 253 (1958). However, where the words are clear and no doubt exists, the letter of the law is not to be disregarded under the pretext of pursuing its spirit. See section 3 of the Statutory Construction Act of December 6, 1972, P.L. 966, (No. 290), 1 PS (app.) §§1921, et seq. We conclude that occupations may be assessed uniformly and that the occupation tax imposed by defendant school district is generally valid.

The final objection raised by plaintiff concerns the fact that each of the three taxing resolutions enacted by the school district places liability on a husband for payment of the tax imposed on his wife. Plaintiff complains that this feature is invalid because the converse is not provided for, i.e., making the wife responsible for her husband's tax in appropriate cases. The genesis of this anomaly is found in The Local Tax Enabling Act and the School Code of Pennsylvania, which are the enabling legislation for the three resolutions. These acts provide for liability on the husband for his wife's tax, but do not authorize the contrary result.

The basis for plaintiff's position is the recent enactment of the Equal Rights Amendment to the Pennsylvania Constitution. This amendment, adopted May 18, 1971, and known as article I, section 28, provides as follows:

"Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual."

Several decisions rendered by our appellate courts lead us to conclude that there is merit in plaintiff's argument. In Henderson v. Henderson, 458 Pa. 97, 327 A. 2d 60 (1974), the Supreme Court struck down section 46, of the Act of May 2, 1929,

P.L. 1237, as amended, 23 PS §46, on the basis of the Equal Rights Amendment. This law had imposed liability on a husband for the payment to his wife of alimony pendente lite, etc., where the situation warranted. However, the law did not provide a reciprocal provision in favor of the husband in a proper situation. In Kaper v. Kaper, 227 Pa. Superior Ct. 377, 323 A. 2d 222 (1974), the Superior Court ruled in a child support case that the father's income was not the sole measure to be used in setting an order. The court ruled that the income of the mother, who had custody of the child, must be considered in determining what sum the father should contribute to the child's support. In Wiegand v. Wiegand, 226 Pa. Superior Ct. 278, 310 A. 2d 426 (1973), the Superior Court also declared provisions granting bed and board divorces to wives, but not to husbands, as being in conflict with the Equal Rights Amendment.

Defendants seek to avoid the impact of the amendment by asserting that it deals with "rights" and that the provision under consideration is concerned with "obligations." We fail to see such distinction and note that each ruling in the cases cited was based on the fact that the *legal status* of men was treated differently than that of a woman as to the subject matter involved. As the court said in Henderson, supra (at p. 62):

"The sex of citizens of this Commonwealth is no longer a permissible factor in the determination of their legal *rights* and legal *responsibilities*. The law will not impose different *benefits* or different *burdens* upon the members of a society based on the fact that they may be man or woman." (Emphasis added.)

It is certainly an appropriate legislative concern that one spouse might be liable for a proper tax

imposed on his or her mate, but such liability must be provided for equally and uniformly. We note that the legislature responded promptly to the inequity concerning alimony pendente lite by permitting either spouse to claim such payment from the other[1] and we believe similar remedial action on the subject under discussion would be proper.

We conclude, therefore, that the provisions for the collection from a husband of per capita and occupation taxes imposed on his wife, as contained in The Local Tax Enabling Act,[2] the School Code of Pennsylvania,[3] and the three taxing resolutions enacted by defendant on June 19, 1974, are in conflict with the Equal Rights Amendment of the Pennsylvania Constitution and hence unconstitutional.

## CONCLUSIONS OF LAW

1. The occupation tax imposed by defendant school district is not a per capita tax, nor is it a flat rate occupation tax.

2. The uniform assessment of "occupations" at a value of $250 by Dauphin County is not prohibited by The Local Tax Enabling Act or the Fourth to Eighth Class County Assessment Law.

3. The occupation tax, as imposed by defendant school district, is a proper exercise of its taxing powers and conforms to law.

4. The provisions in section 19 of The Local Tax Enabling Act and in article 6, section 679 of the School Code of Pennsylvania, which place liability on a husband for the occupation and per capita

1. See Section 1, Act of June 27, 1974, P.L. 423 (No. 139), 23 PS §46.

2. Section 19 of the Act of December 31, 1965, P.L. 1257, as amended, 53 PS §6919.

3. Article 6, section 679 of the Act of March 10, 1949, P.L. 30, as amended, 24 PS §6-679.

taxes imposed upon his wife, are unconstitutional as being in conflict with article I, section 28 of the State Constitution.

5. The provision which places liability on a husband for the occupation and per capita taxes imposed upon his wife, as contained in the three taxing resolutions adopted by defendant school district on June 19, 1974, is unconstitutional and unenforceable.

## DECREE NISI

And now, March 14, 1975, the court enters the following order:

1. Defendants may continue to impose and collect defendant school district's occupation tax on the basis of a uniform occupational assessment.

2. Defendants are permanently restrained and enjoined from collecting or attempting to collect from a husband any occupation or per capita taxes assessed and levied against his wife.

The prothonotary shall notify the parties of the entry of this decree nisi, and if no exceptions are filed hereto within the time allowed by law a final decree will be entered upon request of plaintiffs. Costs herein shall be paid by the party incurring the cost.