**Peifer v. Central Dauphin School District***

---

* See companion case reported at pp. 4-15 supra.

*John D. Killian* and *Thomas W. Scott*, for plaintiffs.
*Edward E. Knauss, III*, for defendant.
*Metzger, Wickersham, Knauss & Erb*, for School District.

CALDWELL, *Chancellor*, March 14, 1975—This class action litigation seeks to strike down a resolution adopted by defendant school district under The Local Tax Enabling Act of December 31, 1965, P.L. 1257, 53 PS §§6901, et seq., which imposes an "occupation" tax on all persons residing in the district who are 18 years of age or older. Plaintiffs Peifer and White are retired individuals, aged 75 and 76, with no income other than that received from social security, pensions and investments. Plaintiff Kuni is a housewife who has no employment or business other than her duties as a homemaker. Defendant Central Dauphin School District is a second-class school district in Dauphin County. Defendants Farling and Donato are elected tax collectors in Lower Paxton and Swatara Townships, and each is the designated collection agent for all taxes levied by defendant school district upon residents of his respective township.

The resolution in question, adopted on June 19, 1974, levies a tax at the rate of 18 percent (180 mills) of the occupation assessment of district residents. Subjects of local taxation, including occupations, are valued or assessed by the County of Dauphin under the provisions of the Fourth to

Eighth Class County Assessment Law of May 21, 1943, P.L. 571, as amended, 72 PS §§5453.101, et seq.

At its meeting, held April 6, 1960, the following resolution was adopted by the Dauphin County Commissioners:

"RESOLVED that the present occupation assessment of $250.00, to include all men and women over the age of 21 residing in Dauphin County, be continued for the year 1961 and thereafter until change."

This resolution was subsequently amended to lower the age to 18 but otherwise has never been altered.

As a result of all county residents 18 and over receiving an occupation assessment of $250, each resident of defendant school district 18 years of age or over is billed $45, representing the school district's "occupation" tax[1] ($250 × 180 mills = $45).

Plaintiffs first assert that the tax resolution violates the due process provisions of the State and Federal Constitutions because the manner in which occupations are assessed denies them the opportunity to be heard and to challenge the assessment. Plaintiffs do not question the basic right of the school district to impose an occupation tax. Their complaint is that they were never notified they were being assessed and hence denied a hearing on the propriety of their assessment.

There would appear to be no legal objection to the fact that in Dauphin County all persons receive the same occupational assessment of $250, and it is

---

1. While not material to this case, we note that because of a uniform assessment of occupations at $250, the tax imposed will necessarily be the same for all residents of a taxing district. The amount of the tax from district to district in Dauphin County will vary because of different millages applied by local taxing bodies.

difficult to perceive how lack of personal notice could harm or prejudice any resident under these circumstances. The Fourth to Eighth Class County Assessment Law does not require a personal notice of an occupation assessment or a continuation thereof, but does provide for annual notice of the assessment by publication in newspapers, informing all citizens that the assessment roll for the year is completed and available for inspection. Persons aggrieved by an assessment are permitted to appeal from said annual assessment (72 PS §5453.604). Another important section of the same act *does* require personal notice by mail whenever any revision or change is made in an assessment (72 PS §5453.701). Thus, if assessments were increased (other than "across the board"), or if occupations were classified and "valued," we believe personal notice would be required. We fail to see, however, that lack of personal notice of the imposition of a uniform assessment on a resident of the county, or the continuation of it from year to year, constitutes a denial of due process. Plaintiffs have not demonstrated this in any way.

While we find no merit in the contention as to notice, we also have serious reservations as to whether it is wise for us to consider it in this litigation. In Golden v. Andrews, 89 Dauph. 254 (1968), this court ruled that the appeal provisions contained in The Local Tax Enabling Act, supra, 53 PS §§6901, et seq., give taxpayers an adequate statutory remedy at law to raise issues concerning the manner of making assessments, etc. Judge Herman's comments are applicable to plaintiffs' contentions concerning the assessment (at p. 259):

"All of the averments in plaintiffs' complaint could have been raised and, indeed, should have been raised by the appeal procedure provided in the statute before the tax went into effect which was

long before the tax became due, and, consequently, before most taxpayers in the district paid the tax and the School District obligated itself to spend for school purposes the money raised thereby.

"Plaintiffs do not raise the question of the *power to tax* but only the *manner* in which the valuation of occupations was arrived at and the reasonableness of the valuations. It is clear that equity will not hear these complaints when a statutory remedy is available. In Narehood v. Pearson, 374 Pa. 299, 306 (1953), where the Supreme Court sustained the lower court's dismissal of a complaint in equity on preliminary objections in a case involving tax assessments, it was said:

"'Where a statute gives a . . . taxpayer notice, a hearing, and a full and adequate remedy, the Constitutional requirement of "due process" is satisfied: . . . [citing cases], and the strong arm of Equity should not be interposed except for very compelling reasons. Especially is this so where an injunction would create financial chaos in the County and virtually paralyze or effectively prevent the County government from functioning.'"

Although defendants have not objected to our considering this problem, we believe it is nevertheless desirable that plaintiffs proceed by appeal from the assessment if they elect to pursue this point. In Crosson v. Downingtown Area School District, 440 Pa. 468, 270 A. 2d 377 (1970), the court made a very valid observation concerning the posture in which this objection comes before us (at p. 476):

"'To now permit . . . [taxpayers] to attack the assessments in question in an action against the school district and its tax collectors is to require . . . [the school district] to defend the actions of another governmental agency over which they have no supervision or control.'"

One recent case has indicated that an equity court may resolve such issues where no objection is raised by the parties. See Alco Parking Corp. v. Pittsburgh, 453 Pa. 245, 307 A. 2d 851 (1973). However, under the circumstances that exist here we believe the comment in Crosson, supra, is particularly applicable and should be followed by the chancellor.

Plaintiffs next argue that the occupation tax resolution enacted by defendant district is void for vagueness, in that no one can tell with assurance whether or not he is subject to the tax. It is submitted that the resolution contains no definition of occupation or any indication of the standards by which it is determined whether they have an occupation subject to the tax.

Of course the resolution adopted by defendant district simply imposes the tax "on the value of all occupations, *as assessed on the assessment rolls . . . of Dauphin County . . . for tax purposes."* Thus, the school district levies its occupation tax on the persons assessed by the county commissioners and does not purport to define or classify the term "occupation." Plaintiffs' complaint, in reality, is directed at the action of the county commissioners in decreeing that *all* residents over 18 years shall have an occupational assessment, without regard to whether they are gainfully employed or have a monetary income. This criticism concerns not the general *power* of the school district to levy an occupation tax, but the *manner* in which persons are assessed by the county. As such, we believe it falls within the same category as the lack of notice objection. We have also noted elsewhere in this adjudication that we find a uniform occupational assessment unobjectionable.

This particular point is tied closely to another of plaintiffs' arguments, that the tax is not collectible

from retired persons and housewives, who have no occupations and derive no income from gainful employment. Both contentions are bottomed on the premise that the concept of the occupation tax is limited in nature. Plaintiffs' main thesis is that the imposition of an occupation tax must be limited to persons who are gainfully employed in a recognized "occupation" that produces a financial return, and that housewives or retired persons do not fit this mold and therefore cannot be taxed. Whether the county commissioners can or should *assess* such persons is perhaps a valid inquiry, but the specific question before us is whether the school district can levy and collect an occupation tax from them.

After a thorough review of the problem and the cases bearing on it, we have concluded that an occupation tax may not be levied on or collected from retirees and housewives.

The occupation tax resolution of the defendant school district was adopted pursuant to authority granted to it by The Local Tax Enabling Act of December 31, 1965, P.L. 1257, 53 PS §§6901, et seq. This act delegates to local political subdivisions the right to tax certain subjects in order to provide general revenues, in this case to help fund the costs of public education. The act allows local taxes on "persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivisions. . . ." (53 PS §6902). The quoted words in the act are not defined.

Pursuant to· this act, defendant school district adopted its taxing resolution on June 19, 1974. The resolution similarly does not define "occupation" but levies the occupation tax "on the value of all occupations, as assessed on the assessment rolls . . . of Dauphin County . . ."

In our opinion the term "occupation," as used in

the act and in defendant's resolution, contemplates one who is engaged in an income producing form of endeavor. We believe it requires a strained construction to assert that a retired person or housewife has an occupation which can be a proper subject for local taxation.

We also believe it clear that the "occupation" assessments imposed by the Dauphin County Commissioners can effectively and properly be imposed only against one who has an occupation in the sense of receiving an economic return or income. The Fourth to Eighth Class County Assessment Law, supra, as amended, provides:

"The following subjects . . . shall . . . be valued and assessed and subject to taxation . . .

"(b) All salaries . . . and occupations, and all persons over the age of eighteen years who do not follow any occupation or calling. . . ." (72 PS §5453.201(b))

If an occupation assessment was to apply to all residents without regard to income, it would be unnecessary to provide for assessing "persons . . . who do not follow any occupation or calling." Unless the legislature was speaking of "occupation" in the terms suggested, the assessment law itself would be contradictory and misleading. Without imputing a dual legislative intent to this language, it would be impossible to comply with the principles of the statutory construction, which dictate that words and phrases should receive their common meaning and statutes construed so as to give effect to all provisions. See section 3 the Statutory Construction Act of December 6, 1972, P.L. 1339, (No. 290), (1 PS §1903 and §1921).

The most recent decision on the question involved in this case was authored by Honorable R. Paul Campbell in The State College Area School District, 9 Centre Co. L. J. 417 (1974). In a de-

claratory judgment proceeding Judge Campbell held that an "occupation" tax is not a tax on property but upon the pursuit which a man follows in order to support his family. It was also held that the word "occupation" should be given its commonplace meaning, to wit, that it is a pursuit which a person follows in order to acquire property and receive income or some other monetary return, citing Crosson v. Downingtown Area School District, supra. The precise question raised in this case was not squarely before the court in Crosson, supra, but it seems clear to us that the Supreme Court equates the term "occupation" primarily with economic return or income. See similar holdings in Crawford v. Southern Fulton School District, 431 Pa. 324, 246 A. 2d 332 (1968), and Banger's Appeal, 109 Pa. 79 (1885).

A similar decision was reached by the Lancaster County Court in Bigler v. Penn Manor School District, 63 Lanc. 409 (1972), in which the court concluded that retired persons and housewives do not follow pursuits designed to acquire property and therefore are not engaged in an occupation subject to the occupation tax.

The only holding to the contrary was reached by the York County Court in Miller v. York Imperial School District, 23 D. & C. 2d 406 (1960). The court determined that housewives were subject to the occupation tax, and held that, "the concept of 'occupation' is not limited to vocations producing income, but includes the activity to which one's time is devoted or in which one is regularly or habitually engaged." While we agree that economic return may not be the *sole* measure of the value of an occupation, we believe it is an essential ingredient of an occupation before it may be assessed and taxed. We conclude subsequent decisions of the Supreme Court indicate that the holding in Miller,

supra, would not be followed and that the reasoning of the Centre and Lancaster County Courts is correct.

Although we have concluded that the occupation tax can be sustained as meeting legal requirements, we heartily agree with the dicta statements of Judge Campbell in the case of The State College Area School District, supra at 419-420, and believe they merit repetition here:

"We do not believe that any person endowed with a devious mind could dream up a more inequitable tax than the occupation tax, and we sincerely hope that the Legislature will remove it from the statute books and replace it with a more equitable tax at the earliest moment."

". . .

"The local taxation statute of this Commonwealth provides that subjects (persons) be valued, •assessed and subject to taxation for all county, city, borough, town, township, school and poor purposes. The Act defines 'subjects' as being *all persons over the age of eighteen years*. We sincerely believe that everyone should pay some tax. Of course, the great bulk of tax income must come from those who have the ability to pay. No church would expel the widow on the grounds that her 'widow's mite' would not pay the cost for keping [sic] her on the church roll and the mailing list for church publications. The young person, the student, the housewife, the indigent, the retiree, could at least afford to pay something less than the value of a postage stamp per day for the operation of the governments under which they live. When you consider that a person who smokes a pack of cigarettes a day, or a person who makes a weekly trip to the liquor store or tavern, or even indulges in the luxury of a daily ice cream cone, spends between $100 and

$200 per year, it should not impose an undue hardship to pay a minimal amount for the privilege of being called a responsible citizen. When we put these things in perspective, our society is truly to be condemned when we constantly enlarge that group of people who accept no responsibility, however small, for the operation of their government."

## CONCLUSIONS OF LAW

1. Personal notice of a uniform occupation assessment, as imposed in Dauphin County, is not required by law.

2. Notice of a uniform occupation assessment by publication satisfies due process requirements.

3. All occupations may be assessed at the same value and it is not required that occupations be "classified" and "valued" according to categories.

4. An occupation tax is not a tax on property but upon the pursuit which a person follows in order to acquire property and receive income or some other monetary return.

5. An occupation assessment must be on an occupation which produces an income or a monetary return.

6. Housewives and retired persons are not subject to an occupation tax, unless they have employment or a pursuit from which they realize an income or a monetary return.

## DECREE NISI

And now, March 14, 1975, the court enters the following order

1. Defendants are permanently restrained and enjoined from collecting occupation taxes from the named plaintiffs and all other retired persons, housewives and others who have not or do not engage in a gainful occupation at any time during the 1974-75 fiscal year, or at any time during any future fiscal year.

2. The school district is directed in future years to notify the residents of the district that housewives, retired persons and others without gainful employment are exempt from the occupational tax, and shall make available to residents information forms on which their exempt status may be determined by the district.

3. The school district is directed in future years to refrain from collecting an occupation tax from persons shown to be or known to be exempt from said tax under the terms of this adjudication.

4. The district shall refrain from furnishing invoices for the occupation tax to the defendant tax collectors, or their successors in office, for persons known or shown to be exempt from said tax under the terms of this adjudication.

5. The district shall refrain from levying the occupation tax in future years against any resident who is exempt from said tax, except that the district may in its discretion, require residents to establish their tax exempt status annually, so that any change in status may be determined.

The prothonotary shall notify the parties of the entry of this decree nisi and if no exceptions are filed hereto within the time allowed by law a final decree will be entered upon request of the plaintiffs. Costs herein shall be paid by the party incurring the cost.